1  **BURSOR & FISHER, P.A.**
2  L. Timothy Fisher (State Bar No. 191626)
   Julia K. Venditti (State Bar No. 332688)
3  Joshua B. Glatt (State Bar No. 354064)
4  1990 North California Blvd., 9th Floor
   Walnut Creek, CA 94596
5  Telephone: (925) 300-4455
6  Facsimile:  (925) 407-2700
   E-mail: ltfisher@bursor.com
7          jvenditti@bursor.com
8          jglatt@bursor.com
9  *Attorneys for Plaintiff and the Putative Class*

```
                          ┌─────────────────────────────┐
                          │          FILED              │
                          │   ┌──────────────────────┐  │
                          │   │     Apr 16 2025      │  │
                          │   └──────────────────────┘  │
                          │    CLERK, U.S. DISTRICT COURT│
                          │ SOUTHERN DISTRICT OF CALIFORNIA│
                          │ BY    s/ danielmartinez  DEPUTY│
                          └─────────────────────────────┘
```

10
11
12              **UNITED STATES DISTRICT COURT**
13            **SOUTHERN DISTRICT OF CALIFORNIA**
14

15  AMY WYSOCKI, on behalf of herself        Case No.  **'25CV907  JES  VET**
16  and all others similarly situated,
                                             **CLASS ACTION COMPLAINT**
17                          Plaintiff,
                                             JURY TRIAL DEMANDED
18       vs.
19
20  CHOBANI, LLC,
21                          Defendant.
22

23
24
25
26
27
28

Plaintiff Amy Wysocki ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Chobani LLC ("Chobani" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit on behalf of herself and other similarly situated consumers ("Class Members") who purchased Chobani's yogurt products, including but not limited to Chobani's Nonfat Plain Greek Yogurt and Chobani's Whole Milk Plain Greek Yogurt (the "Products").[1]  Defendant's yogurt product affirmatively claims to contain "Only Natural Ingredients" while disclaiming the presence of any artificial flavoring and sweeteners and preservative.



2.      Unfortunately for consumers, however, recent third-party testing revealed that the Products contain multiple plastic chemicals, including di-2-

---

[1] Discovery may reveal that additional Products are within the scope of this Complaint.  Accordingly, Plaintiff reserves the right to include additional items identified through the course of discovery.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

ethylhexyl phthalate ("DEHP"), diethyl phthalate ("DEP"), dibutyl phthalate ("DBP"), and phthalate substitute called di-2-ethylhexyl terephthalate ("DEHT").

3.    These findings contradict Defendant's prominent front-label and lid representations that its Product contains "only natural ingredients."

4.    These phthalates are endocrine-disrupting chemicals "mainly used as plasticizers added to polyvinyl chloride (PVC) plastics for softening effects" which "are detrimental to human health."[2]  These chemicals have also been reported as probable human carcinogens by the EPA.[3]

5.    Accordingly, Plaintiff brings claims against Defendant on behalf of herself and all others similarly situated for (1) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violations of California's Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; and (5) Unjust Enrichment / Restitution.

---

[2] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5) Healthcare (Basel) 603 (May 18, 2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf (hereinafter "*Phthalates and Their Impacts on Human Health*") ("Plastic has brought … many negative impacts on … human health, which has become a global problem. People are constantly exposed to plastics via contaminated food, [among other sources] …. Long-term plastic exposure would inevitably lead to the leaching of many harmful substances.  The most concerns include phthalates[.]  These substances have been identified as endocrine-disrupting chemicals (EDCs) which interfere with normal hormonal actions.  Phthalates are a series of chemical substances, which are mainly used as plasticizers added to polyvinyl chloride (PVC) plastics for softening effects.  Phthalates can potentially disrupt the endocrine system.  Health concerns regarding the detrimental impacts of phthalates on the development and reproductive system have been raised in the recent decades.").

[3] *See* United States Environmental Protection Agency, *Di (2-ethylhexyl)phthalate (DEHP)*, *available at* https://iris.epa.gov/ChemicalLanding/&substance_nmbr=14 (last accessed Mar. 20, 2025).

2

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**PARTIES**

6.     Plaintiff Amy Wysocki is a natural person and a citizen of California who resides in San Marcos, California.  Ms. Wysocki purchased the Chobani's Greek Yogurt Nonfat Plain Product from a brick-and-mortar retail store in or around San Marcos, California, in 2023.  In making her purchase, Ms. Wysocki relied on prominent representations on the Product's labeling and packaging that the Product contains "Only Natural Ingredients."  Plaintiff had no reason to believe that the Product contained, or risked containing, in a single serving, unsafe levels of phthalates.  As such, Ms. Wysocki reasonably understood Defendant's representations and warranties to mean the Product is free of non-natural toxic chemicals, like phthalates and therefore expected that the Product can be purchased and consumed as marketed and sold. Defendant's untrue representations were part of the basis of the bargain in that she would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known.  Thus, as a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries.

7.     Plaintiff remains interested in purchasing the Product from Defendant in the future.  However, she is unable to determine if the Product actually contains only natural ingredients and is actually safe for consumption or if it contains—or risks containing—synthetic phthalate compounds.  As long as the Product is marketed as being comprised of "only natural ingredients" when it contains—or risks containing—synthetic, phthalate compounds, Plaintiff will be unable to make informed decisions about whether to purchase Defendant's Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products.  Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward.  Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually

3

1    conforms to Defendant's representation that the Product contains and is comprised of

2    only natural ingredients.

3        8.    Defendant Chobani, LLC is a New York corporation with its principal

4    place of business in New York, New York.  Defendant markets and sells yogurt and

5    dairy products, including the Product, throughout California and the United States.

6                        **JURISDICTION AND VENUE**

7        9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

8    1332(d)(2)(A), as modified by the Class Action Fairness Act ("CAFA"), because

9    there are more than 100 Class Members, at least one member of the Class is a citizen

10   of a different state than Defendant, and the aggregate amount in controversy exceeds

11   $5,000,000.00, exclusive of interest, fees, and costs.

12       10.   This Court has personal jurisdiction over Defendant because Defendant

13   conducts substantial business within California, including in this District, and

14   purposefully availed itself of the benefits of doing business in this District by

15   conducting substantial business in California such that Defendant has significant,

16   continuous, and pervasive contacts with the State of California.  In addition, a

17   substantial portion of the events giving rise to Plaintiff's claims occurred in this

18   District by purchasing the Product in this District.

19       11.   Venue is proper in this District under 28 U.S.C. § 1391 because a

20   substantial portion of the events, omission, and acts giving rise to the claims herein

21   occurred in this District, including Defendant's sale and Plaintiff's purchase of the

22   Product in this District.

23

24

25

26

27

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**FACTUAL ALLEGATIONS**

**A.    THE HARMS OF PLASTIC CHEMICALS**

12.    In December of 2024, an organization called PlasticList tested everyday food items for the presence of plastic chemicals.[4]  This testing involved contracting with a third-party ISO/IEC 17025-accredited laboratory experienced in food testing and securing the assistance of analytical chemists and epidemiologists who helped the group ensure accuracy.[5]  The group tested for a range of endocrine disrupting chemicals, including phthalates.[6]

13.    Phthalates were developed as plasticizers, intentionally added to plastics to make them more flexible and durable.[7]  Phthalates are widely used in food production and packaging, cosmetics, and electronics.[8]

14.    Phthalates "readily leach"[9] into surrounding surfaces, including food. In humans, phthalates are endocrine disrupting chemicals that introduce a variety of health effects.  These effects were not known for many years due to a focus on high-dosage exposure models, but for plastic chemicals, low-dose effects may be even more harmful: "[the] paradigm of 'the dose makes the poison' does not hold for … phthalates, and other endocrine disrupting chemicals. The unique properties of …

---

[4] PlasticList Report (published Dec. 27, 2024; updated Dec. 31, 2024), *available at* https://www.plasticlist.org/report (last accessed Mar. 20, 2025) ("2024 PlasticList Report").

[5] *Id*.

[6] *Id*.

[7] Kevin Loria, "What's the Difference Among Microplastic, Phthalates, BPA, and PFAS?" *Consumer Reports* (published May 29, 2024), *available at* https://www.consumerreports.org/toxic-chemicals-substances/microplastics-phthalates-bpa-pfas-a1059022044/ (last accessed Mar. 20, 2025).

[8] *Id*.

[9] Genoa Warner, Jodi Flaws, "Bisphenol A and Phthalates: How environmental Chemicals are Reshaping Toxicology," *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC6260148/

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

phthalates, including low-dose effects, nonmonotonic dose response curves (NMDRCs), and quick metabolism, disobey traditional principles of toxicology." [10]

15.    Plastic chemicals have health impacts including disruptions of the endocrine, respiratory, and nervous systems.[11]

16.    Physicians, researchers, and public health experts have called for the elimination of phthalates from consumer products, including food packaging and materials that come in contact with food, due to their adverse effects on neurological development.[12]

**B.    THE PRODUCT WAS FOUND TO CONTAIN TOXIC PHTHALATES**

17.    PlasticList tested two of Defendant's products: Chobani Nonfat Plain Greek Yogurt (the version Plaintiff purchased) and Chobani Whole Milk Plain Greek Yogurt.  Each of the Products were found to contain plastic chemicals.[13]

18.    Specifically, both contained di-2-ethylhexyl phthalate ("DEHP"), diethyl phthalate ("DEP"), and di-2-ethylhexyl terephthalate ("DEHT").[14]

19.    Di-2-ethylhexyl phthalate, or DEHP, is a manufactured chemical that is commonly added to plastics to make them flexible.[15] "DEHP is best known as an

---

[10] *Id.*

[11] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5) Healthcare (Basel) 603 (May 18, 2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf ("*Phthalates and Their Impacts on Human Health*").

[12] Stephany Engel, Heather Patisaul, Charlette Brody, Russ Rauser, Amy Zota, Deborah Bennet, Maureen Swanson, and Robin Whyatt, "Neurotoxicity of Ortho-Phthalates: Recommendations for Critical Policy Reforms to Protect Brain Development in Children" *available at* https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2020.306014

[13] 2024 PlasticList Report, *supra.*

[14] *Id.*

[15] Agency for Toxic Substances and Disease Registry ("ATSDR"), *Di(2-Ethylhexyl)Phthalate (DEHP)* (last reviewed Feb. 10, 2021), https://wwwn.cdc.gov/TSP/substances/ToxSubstance.aspx?toxid=65 (last accessed March 5, 2025).

---

6

endocrine disruptor (ED).  An endocrine disrupter is an exogenous substance or mixture that alters the function(s) of the endocrine system and consequently causes adverse health effects …. DEHP is highly toxic."[16]  Studies indicate that exposure to DEHP can have a panoply of negative hepatic, renal, immunological, reproductive, and developmental effects on human health,[17] including "insulin resistance and higher systolic blood pressure and the reproduction system problems, including earlier menopause, low birth weight, pregnancy loss, and preterm birth."[18]  "DEHP is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm."[19]

20.     Dibutyl phthalate, or DBP, is an oily liquid that is used as a plasticizer and solvent.  Exposure to DBP can cause various adverse health effects, including reproductive and developmental harm.[20]  DBP is on California's Proposition 65 list due to its ability to cause birth defects or other reproductive harm. [21]  "California law prohibits the manufacture, sale, or distribution of children's toys and child care

---

[16] Sai Sandeep Singh Rowdhwal, et al., *Toxic Effects of Di-2-ethylhexyl Phthalate: An Overview*, 2018:1750368 Biomed Res Int. 1, 2 (2018), https://pmc.ncbi.nlm.nih.gov/articles/PMC5842715/pdf/BMRI2018-1750368.pdf (last accessed March 5, 2025).

[17] *See, e.g.*, ATSDR, *Toxicological Profile for Di(2-Ethylhexyl)Phthalate (DEHP)* (2022), at 17-18, https://www.atsdr.cdc.gov/ToxProfiles/tp9-c2.pdf (last accessed March 5, 2025).

[18] Yufei Wang, et al., *Phthalates and Their Impacts on Human Health*, 9(5) Healthcare (Basel) 603 (May 18, 2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8157593/pdf/healthcare-09-00603.pdf (last accessed March 5, 2025) ("*Phthalates and Their Impacts on Human Health*") at 3-4.

[19] *Id.*

[20] *See* Proposition 65 Warnings, California Office of Environmental Health Hazard Assessment, *Di-n-butyl Phthalate (DBP)*, https://www.p65warnings.ca.gov/fact-sheets/di-n-butyl-phthalate-dbp

[21] *Id.*

7

articles containing DBP at levels greater than 0.1%," and federal law has a similar prohibition.[22]

21.    Diethyl phthalate, or DEP, is a synthetic substance is commonly used to make plastics more flexible.[23]  "Once [DEP] enters your body, it breaks down into other chemicals, some of which are harmful."[24]  This harm can androgen-independent male reproductive toxicity (*i.e.*, sperm effects) as well as developmental toxicity and hepatic effects, with some evidence of female reproductive toxicity.[25]

22.    Di-2-ethylhexyl terephthalate, or DEHT, is a phthalate substitute used as a general purpose plasticizer.  DEHT is a structural isomer of DEHP.[26]  While DEHT has been found to have a weaker effect on human hormones than its phthalate counterpart,[27] research is limited.

## C.    DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS MISLEAD CONSUMERS

23.    The Products labeling and packaging states that the Products use "Only Natural Ingredients."  Indeed, based on Defendant's representations, Ms. Wysocki and other consumers reasonably understood Defendant's affirmative representations and warranties to mean the Product is free of toxic plastic chemicals, and therefore

---

[22] *Id.*

[23] ATSDR, Public Health Statement for Diethyl Phthalate (last reviewed Oct. 21, 2011), https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=601&toxid=112.

[24] *Id.*

[25] James Weaver et al., "Hazards of diethyl phthalate (DEP) exposure: A systematic review of animal toxicology studies," National Library of Medicine, *available at* https://pubmed.ncbi.nlm.nih.gov/32958228/. https://pmc.ncbi.nlm.nih.gov/articles/PMC7995140/#:~:text=Conclusions%3A,evidence%20of%20female%20reproductive%20toxicity.

[26] Manori J. Silva, et al., "Exposure to di-2-ethylhexyl terephthalate in the U.S. general population from the 2015–2016 National Health and Nutrition Examination Survey," 123 Environ. Int. 141 (Feb. 2019), https://www.sciencedirect.com/science/article/pii/S0160412018322578.

[27] Kambia et al., "Comparative Effects of Di- (2-ethylhexyl)phthalate and Di-(2-ethylhexyl)terephthalate Metabolites on Thyroid Receptors: In Vitro and In Silico Studies," Metabolites (Feb. 2021), *available at* doi: 10.3390/metabo11020094.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1  expected that the Products are healthy and can be purchased and consumed as

2  marketed and sold.

 

24.    These representations and warranties are material to consumers who reasonably understand—like Plaintiff—that a product voluntarily claiming to be comprised of "only natural ingredients" indeed be comprised of only natural ingredients.  In fact, "[w]hen poll respondents don't see 'natural' on food packaging, 52% of them assume the product must have chemicals in it.  Another 43% deduce that the product is highly processed.  Some 42% assumed that the food is unhealthy or full of preservatives."[28]  Inversely, "consumers [are] vastly more likely to purchase a product with the natural label[.]."[29]  In fact, "1 in 3 global consumers consider natural ingredients to be one of the most important aspects of healthy food

---

[28] Christine Zulkosky, "What Do Americans Think 'Natural Foods' Are," August 28, 2023, *available at* https://foodinstitute.com/focus/what-do-americans-think-natural-foods-are/

[29]Jack Bobo, "Viewpoint: 70% of consumers say 'natural' food is healthiest, but there's no science behind the marketing hype," June 4, 2020, *available at*, https://geneticliteracyproject.org/2020/06/04/viewpoint-70-of-consumers-say-natural-food-is-healthier-but-theres-no-science-behind-the-marketing-hype/.

9

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

and beverages, second only to freshness.  According to Tate & Lyle Research, 94% of global consumers read product labels and prefer drinks without artificial ingredients."[30]  To that end, 2 in 3 consumers, like Plaintiff "say that clean label claims influence their purchasing decisions."[31]

25.    Consumers, like Plaintiff, thus expect that a product which affirmatively represents that it contains "only natural ingredients" prominently on front and top label, while affirmatively disclaiming the presence of any artificial flavors and sweeteners, and preservatives, to be wholly free of any toxic plasticizers.

26.    Each version of Defendant's Yogurt products are substantially similar. Chobani's other products heavily feature cultured nonfat milk, cane sugar, water, and natural flavors and are thus made with the same, or nearly the same, ingredients.

27.    Additionally, the packaging for each uses nearly identical trade dress, varying only in the color specifying the flavor with occasional additions of fruit images.  And, most, if not all, containers are made from the same #5 Plastic that is likely the source of some, if not all, of the phthalates leaching into the Product.

28.    Critically, the packaging for all of Defendant's Products specify that are composed of "Only Natural Ingredients."  As such, each variation of Defendant's Greek Yogurt product is substantially similar to that which Plaintiff purchased.

**D.    DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS ARE ACTIONABLE**

29.    Defendant affirmatively represents that its Products contain "only natural ingredients."  Concurrently, Defendant omits a material fact to consumers— that the Products contain, or risk containing, toxic phthalate chemicals.

---

[30] Sara Helminen, "Clean Label Trend Is Evolving – Consumers Still Willing To Pay A Price Premium," Valio (May 29, 2023) *available* at https://www.valio.com/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/#:~:text=1%20in%203%20global%20consumers,prefer%20drinks%20without%20artificial%20ingredients.

[31] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

30.     As the primary manufacturer, advertiser, and wholesaler of the Product, Defendant knew, or should have known, that the Product's labeling fails to conform to its representations and warranties.  Because the phthalates found in the Product are plasticizers, it is likely that they were introduced into the Product through the plastic container.  Defendant, as the manufacturer, is likely aware of the type of plastic used to create the container and is likely in possession of, or capable of obtaining, purity reports and testing from its plastic manufacturers.  Defendant either did so, or negligently or willingly failed to do so.

31.     Indeed, most Chobani yogurt cups—including Plaintiff's—are made from #5 plastic, known chemically as polypropylene.  And "[p]thalates are commonly used as a catalyst in the polymerization[32] of propylene to polypropylene."[33]

32.     Plaintiff and Class Members saw and relied on Defendant's representations and omissions and reasonably understood these representations and warranties to mean that the Product was free of toxic plasticizers.  Plaintiff and Class Members would have paid substantially less for the product or would not have purchased the Product at all had they known that the Product contained harmful chemicals.  Therefore, Plaintiff and the Classes were injured by the price premium they paid for the Product which they otherwise would not have paid absent Defendant's misrepresentation and omission.

33.     Defendant also had a duty to disclose because of its exclusive and/or superior knowledge concerning the true nature of the Product.  Defendant also had a duty to disclose because the presence of phthalates was contrary to a representation actually made: "Only made with natural ingredients."

---

[32] Polymerization is the process of causing propylene molecules to bond.

[33] Karen Laird, *Phthalate-Free Polypropylene Catalysts Is Safer, Boosts Productivity*, Sustainable Plastics (June 18, 2020) *available* https://www.sustainableplastics.com/news/phthalate-free-polypropylene-catalyst-safer-boosts-productivity.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

34. Although Defendant is in the best position to know the true nature of its Product during the relevant timeframe, to the extent possible, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

35. **WHO**: Defendant Chobani, LLC.

36. **WHAT**: Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain Phthalates. These omissions were material to Plaintiff and the Classes because they would not have paid the same amount for the Product or would not have purchased the Products at all had they known the Products contained phthalates. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Products in this manner in the United States.

37. **WHEN**: Defendant made material misrepresentations and omissions to Plaintiff and Class Members during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Products were not free of harmful chemicals. Plaintiff and Class Members viewed the packaging of the Product when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Product did not contain harmful chemicals.

38. **WHERE**: Defendant's made material misrepresentations and omissions on the Products' labels and packaging.

39. **HOW**: Defendant made material misrepresentations and omissions of fact regarding the Product by representing and warranting that the Product was safe and healthy to eat. Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Products.

40. **INJURY**: Plaintiff and Class Members purchased, paid a premium (up to the full price), or otherwise paid more for the Products than they would have, or

1
2

alternatively they would not have purchased the Products at all, absent Defendant's misrepresentations and omissions.

3

## CLASS ALLEGATIONS

4
5

41.     Plaintiff brings this matter on behalf of herself and all similarly situated in the following classes (collectively, the "Classes")

6
7

> All natural persons in the United States who purchased the Product, and all substantially similar products, during the applicable statutory period. (the "**Nationwide Class**")

8
9

42.     Plaintiff also brings this matter on behalf of herself and all similarly situated in the following Subclass

10
11

> All natural persons in the State of California who purchased the Product, and all substantially similar products, during the applicable statutory period. (the "**California Subclass**")

12
13
14
15
16
17

43.     Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

18
19
20
21

44.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions, including the addition of one or more Subclasses, in connection with her motion for class certification, or at any other time, based on *inter alia*, changing circumstances and new facts obtained.

22
23
24
25
26
27

45.     **Numerosity:** Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are tens of thousands of people who purchased the Product and substantially similar versions of the Product and who have been injured by Defendant's false and misleading representations. While the exact number of members of each Class is unknown to Plaintiff at this time, such information can be ascertained through appropriate discovery from records maintained by Defendant and its agents.

28

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

46.    **Commonality and Predominance:** The questions of law and fact common to the classes which predominate over any questions which may affect individual class members include, but are not limited to:

(a)    Whether Defendant's Product contains phthalates;

(b)    Whether Defendant made an express warranty;

(c)    Whether Defendant breached that express warranty;

(d)    Whether the phthalate content is harmful;

(e)    Whether a reasonable consumer would understand Defendant's representations and warranties to mean that the Product is free of phthalates;

(f)    Whether the presence of phthalates is material to a reasonable consumer;

(g)    Whether Defendant had a duty to disclose the presence of phthalates in its Product;

(e)    Whether Defendant's conduct violated California's consumer protection statutes;

(f)    Whether Defendant's conduct amounted to violations of the common law; and

47.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the members of the Classes. The named Plaintiff, like other members of the Classes, purchased the Product and Defendant's substantially similar Products. Plaintiff relied on the representations and warranties made by Defendant on the Product's packaging that the Product was safe for ordinary use.

48.    **Adequate Representation:** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this class action. Neither Plaintiff, nor Plaintiff's counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff is able to fairly and adequately represent the interest of the Class.

14

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff has raised viable statutory claims of the type reasonably expected to be
raised by members of the Class and will vigorously pursue those claims.  If
necessary, Plaintiff may seek leave of this Court to amend this complaint to include
additional Class Representatives to represent the Class or additional claims as may
be appropriate.

49.    **Superiority:** A class action is superior to other available methods for
the fair and efficient adjudication of this controversy because individual litigation of
the claims of all members of the Classes is impracticable.  Even if every member of
the Classes could afford to pursue individual litigation, the Court system could not.
It would be unduly burdensome to the courts in which individual litigation of
numerous cases would proceed.  Individualized litigation would also present the
potential for varying, inconsistent, or contradictory judgments, and would magnify
the delay and expense to all parties and to the court system, resulting in multiple
trials of the same factual issues.  By contrast, the maintenance of this action as a
class action, with respect to some or all of the issues presented herein, presents fewer
management difficulties, conserves the resources of the parties and of the court
system and protects the rights of each member of the Classes.  Plaintiff anticipates no
difficulty in the management of this action as a class action.  Class-wide relief is
essential to compel compliance with California's consumer protection laws.

**COUNT I**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

50.    Plaintiff incorporates the foregoing allegations as if fully set forth
herein.

51.    Plaintiff brings this claim individually and on behalf of the California
Subclass.

15

52.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."

53.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

54.     Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them as advertised."

55.     Defendant violated Civil Code §§1770(a)(5), (a)(7), and (a)(9) by holding out the Product as being made from **only** natural ingredients, such that it is safe enough to consume, when, in fact, the Product contained (or risked containing) unsafe, unnatural, toxic phthalates.

56.     Defendant made its representations to Plaintiff and the members of the California Subclass while suppressing the true nature of the Product.  Specifically, Defendant displayed the Product and described it as wholly comprised of only natural ingredients and therefore safe to ingest, including on the Product's packaging, without disclosing that the Product contains (or risks containing) toxic phthalates chemicals.  As such, Defendant affirmatively misrepresented, *inter alia*, the ingredients, quality, and grade of the Product while continuing to advertise the goods without the intent to sell them as advertised.

57.     Plaintiff and the California Subclass suffered harm as a result of the violations of the CLRA because they incurred, charged, and/or paid monies for the Product that they otherwise would not have incurred or paid and were unknowingly exposed to a significant and substantial health risk.

58.     On January 21, 2025, prior to filing this complaint, Defendant's Counsel received Plaintiff's demand letter via certified mail.  The letter advised Defendant that it was in violation of the CLRA with respect to the presence of phthalates in the Product, and demanded that they cease and desist from such

16

violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

59.    Defendant failed to remedy the issues raised by the notice letter.

60.    Pursuant to Civ. Code § 1780, Plaintiff and the California Subclass seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative acts and practices; (c) restitution of all money and property lost by Plaintiff and the Subclass as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) attorneys' costs and fees.

## COUNT II
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

61.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

62.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

63.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

64.    **Unlawful Business Practices:** Defendant violated the UCL's proscription against engaging in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9), as well as by violating California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

65.    As more fully described above, Defendant's misleading packaging and labeling of its Product is likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the

17

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

representations and omissions of material facts, as set forth more fully above, thereby violating the common law.

66.    Plaintiff and the Classes reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

67.    **Unfair Business Practices:** Defendant also violated the UCL's prohibition against engaging in unfair business practices.  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, *et. seq.*, as the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

68.    There were reasonably available alternatives to further Defendant's legitimate business interest other than the conduct described above, such as warning about the risk of phthalates and/or testing to ensure phthalates are not present. Defendant could have required that its plastic supplier also test and ensure purity but didn't.  It could have used a different style of plastic, but it didn't.  There are no legitimate business purposes served by Defendant's conduct, which caused Plaintiff and the California Subclass economic injury because they purchased a Product, the basis of the bargain for which was untrue.

69.    **Fraudulent Business Practices:** Defendant has further violated the UCL's proscription against engaging in fraudulent business practices.  Defendant's claims, nondisclosures, and misleading statements with respect to the Product, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

70.    Plaintiff and the Classes suffered a substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair packaging, labeling, and omission about the inclusion of harmful toxins in its Product.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

71.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Product.

72.     Plaintiff and the Classes had no way of reasonably knowing that the Product they purchased was not truthfully marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

73.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

74.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

## COUNT III
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff and the California Subclass)

75.     Plaintiff incorporate the foregoing allegations as if fully set forth herein.

76.     Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

77.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive, members of the California Subclass and public.  As described throughout this Complaint, Defendant misrepresented the Product as wholly natural, free from toxic chemicals, and therefore safe to ingest

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

when, in fact, the Product is (or risks being) not wholly natural, free from toxic chemicals, or safe to ingest because of the inclusion of phthalates.

78.    By its actions, Defendant disseminated advertisements on its product that it contains only natural ingredients.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public.

79.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the Product contains (or risks containing) substances that pose a significant risk to the health of consumers and failed to correct its advertising.

80.    Defendant continues to misrepresent to consumers that the Product is safe to ingest and wholly natural when, in fact, the Product is not or risks being not.

81.    In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and members of the California Subclass based their purchasing decisions on Defendant's omitted material facts.  The revenue attributable to the Product sold in those false and misleading advertisements likely amounts to millions of dollars.  Plaintiff and members of the California Subclass were injured in fact and lost money and property as a result.

82.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et. seq.*

83.    As a result of Defendant's wrongful conduct, Plaintiff and members of the California Subclass lost money in an amount to be proven at trial.  Plaintiff and the Subclass are therefore entitled to restitution as appropriate for this cause of action.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

84.     Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under California Code Civ. Proc. § 1021.5; and (e) injunctive relief, and other appropriate equitable relief.

## COUNT IV
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)

85.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

86.     Plaintiff brings this claim individually on behalf of herself and the Nationwide Class.

87.     Plaintiff brings this claim under the laws of the State of California.

88.     Plaintiff and Nationwide Class Members formed a contract with Defendant at the time Plaintiff and Nationwide Class Members purchased the Product.

89.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Product packaging, as described above.

90.     This labeling constitutes an express warranty and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and Nationwide Class Members.

91.     As set forth above, Defendant purports through its labeling and packaging, to create an express warranty that the Product is safe for its intended use.

92.     Plaintiff and Nationwide Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

93.     Defendant breached express warranties about the Product and its qualities because, despite Defendant's warranties that the Product is made wholly

21

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

from natural ingredients, the Product risks containing, or worse, does contain toxic phthalates chemicals.  Thus, the Product does not conform to Defendant's affirmations and promises described above.

94.    Plaintiff and each Nationwide Class Member would not have purchased the Product had they known the true nature of the Product.

95.    As a result of Defendant's breach of express warranty, Plaintiff and each Nationwide Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT V**
**Unjust Enrichment / Restitution**
**(On Behalf of Plaintiff and the Nationwide Class)**

96.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

97.    Plaintiff brings this claim under the laws of the State of California.

98.    To the extent required by this law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

99.    Plaintiff and members of the Nationwide Class conferred benefits on Defendant by purchasing the Product.

100.    Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and members of the Nationwide Class's purchases of the Product. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Product contained (or risked containing) toxic substances, rendering its "only natural ingredients" representations false and misleading.  These omissions caused injuries to Plaintiff and members of the Nationwide Class because they would not have purchased the Product if the true facts were known.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

101.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)   For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c)   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)   For prejudgment interest on all amounts awarded;

f)   For an order of restitution and all other forms of equitable monetary relief;

g)   For injunctive relief as pleaded or as the Court may deem proper;

h)   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated: April 16, 2025          Respectfully submitted,

**BURSOR & FISHER, P.A**.

By: ___/s/ *Julia K. Venditti*_____
          Julia K. Venditti

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)

23

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            jvenditti@bursor.com
            jglatt@bursor.com

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLRA VENUE DECLARATION**

I, Julia K. Venditti, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate at Bursor & Fisher, P.A., and counsel of record for Plaintiff Amy Wysocki in this matter.  Amy Wysocki alleges that she resides in San Marcos, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California, as Plaintiff purchased the Products from a brick-and-mortar retail stores located within this District.  Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 16th day of April 2025.

_____*/s/ Julia K. Venditti*_____
Julia K. Venditti

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED