**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jvenditti@bursor.com
         jglatt@bursor.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY WYSOCKI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHOBANI, LLC,<br><br>Defendant. | Case No. 3:25-cv-00907-JES-VET<br><br>**OPPOSITION TO DEFENDANT CHOBANI, LLC'S MOTION TO DISMISS COMPLAINT**<br><br>Date:  August 20, 2025<br>Time:  10:00 am<br>Courtroom:  4B<br>Judge:  Hon. James E. Simmons, Jr. |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 2

I.  PLAINTIFF ALLEGES ACTIONABLE MISREPRESENTATIONS ................................................................ 2

II.  THE NINTH CIRCUIT IN *BOWN* FORECLOSED DEFENDANT'S ARGUMENTS CONCERNING THE LEVELS OF PHTHALATES ...................................................................... 4

III.  *BOWEN* ASIDE, WHETHER A REASONABLE CONSUMER WOULD BE DECEIVED IS A QUESTION OF FACT FOR THE JURY ............................................................................... 5

IV.  PLAINTIFF PLAUSIBLY ALLEGED THAT DEFENDANT'S "ONLY NATURAL INGREDIENT CLAIM" IS MISLEADING ................. 7

    A.  Whether The Amount Of Phthalates In Defendant's Products Is Safe Is A Question Of Fact For The Jury .......................... 12

    B.  Plaintiff's Allegations Comport With Rule 9(b) .................................. 13

V.  PLAINTIFF PLAUSIBLY ALLEGES PHTHALATES ARE PRESENT IN DEFENDANT'S PRODUCTS .................................... 13

VI.  PLAINTIFF HAS STANDING TO ASSERT HER CLAIMS ...................... 14

    A.  Plaintiff's Plausibly Alleges Economic Injury .................................. 14

    B.  Questions About Testing Efficacy Are Fact Questions Not Appropriate For Resolution On A Motion To Dismiss ...................... 18

    C.  Plaintiff Has Standing To Bring Claims For Products Substantially Similar To The One She Purchased ............................. 20

VII.  PROPOSITION 65 IS NOT RELEVENT TO PLAINTIFF'S CLAIMS ....................................................................... 23

VIII.  PLAINTIFF HAS STATED CLAIMS FOR EQUITABLE RELIEF ................................................................ 24

IX.  PLAINTIFF STATED A BREACH OF EXPRESS WARRANTY CLAIM ................................................................. 24

X.  CONCLUSION ................................................................ 25

1
2

**TABLE OF AUTHORITIES**

**PAGE(S)**

3

**CASES**

4
5

*Adler v. Altsleep, LLC,*
   2023 WL 3080757 (C.D. Cal. Feb. 7, 2023) ............................................................7

6
7

*Albrigo v. Chobani, LLC,*
   2025 WL 1930007 (S.D. Cal. July 11, 2025) ...............................................9, 13, 14

8
9

*Anderson v. Apple Inc.,*
   500 F. Supp. 3d 993 (N.D. Cal. 2020) .......................................................................4

10
11

*Badie v. Bank of America,*
   67 Cal. App. 4th 779 (1998) ....................................................................................13

12

*Balser v. Hain Celestial Grp., Inc.,*
   640 Fed. App'x 694 (9th Cir. 2016)...........................................................................7

13
14

*Bowen v. Energizer Holdings, Inc.,*
   118 F. 4th 1134 (9th Cir. 2024)........................................................................passim

15
16

*Boyd v. SunButter, LLC,*
   762 F. Supp. 3d 931 (C.D. Cal. 2025)..........................................................10, 18, 20

17
18

*Bullard v. Costco Wholesale Corp.,*
   2025 WL 506271 (N.D. Cal. Feb. 14, 2025)............................................................12

19
20

*Bullard v. Costco Wholesale Corp.,*
   2025 WL 1397509 (N.D. Cal. May 14, 2025) ...............................................5, 12, 13

21
22

*Cal. Coalition for Women Prisoners v. United States,*
   723 F. Supp. 3d 712 (N.D. Cal. 2024) .....................................................................20

23

*Cesta v. Trader Joe's Co.,*
   2018 WL 6075352 (C.D. Cal. Aug. 28, 2018)...........................................................9

24
25

*Chabner v. United of Omaha Life Ins. Co.,*
   225 F. 3d 1042 (9th Cir. 2000).................................................................................23

26
27

*Collyer v. Catalina Snacks Inc.,*
   712 F. Supp. 3d 1276 (N.D. Cal. 2024) ...................................................................21

28

ii

*Corbett v. PharmaCare U.S., Inc.*,
  2024 WL 1356220 (S.D. Cal. Mar. 29, 2024) .........................................................7

*Corpuz v. Bayer Corp.*,
  2023 WL 2292579 (S.D. Cal. Feb. 28, 2023) ..........................................................8

*Cortez v. Handi-Craft Co., Inc.*,
  2025 WL 1452561 (N.D. Cal. Apr. 29, 2025) .......................................................22

*Davidson v. Kimberly-Clark Corp.*,
  889 F. 3d 956 (9th Cir. 2018) ................................................................................16

*Davidson v. Kimberly-Clark Corp.*,
  899 F. 3d 956 (9th Cir. 2018) ..................................................................................4

*Eminence Cap., L.L.C. v. Aspeon, Inc.*,
  316 F. 3d 1048 (9th Cir. 2003) ..............................................................................25

*Gagetta v. Walmart, Inc.*,
  646 F. Supp. 3d 1164 (N.D. Cal. 2022) ...........................................................12, 16

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
  2014 WL 2451290 (N.D. Cal. June 2, 2014) ........................................................22

*Gasser v. Kiss My Face, LLC.*,
  2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) ........................................................7

*George v. Starbucks Corp.*,
  857 Fed. App'x. 705 (2nd Cir. 2021) ....................................................................10

*George v. Starbucks Corp.*,
  2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020) ......................................................10

*Grausz v. Hershey Co.*,
  713 F. Supp. 3d 818 (S.D. Cal. 2024) ..................................................................11

*Hamman v. Cava Grp., Inc.*,
  2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) .........................................................18

*Hodsdon v. Mars, Inc.*,
  891 F. 3d 857 (9th Cir. 2018) ..................................................................................3

*Holt v. Foodstate, Inc.*,
  2015 WL 9592534 (S.D. Cal. Dec. 31, 2015) .......................................................11

iii

*Iglesias v. Ariz. Beverages USA, LLC*,
  2023 WL 4053803 (N.D. Cal. June 16, 2023) .....................................................8, 21

*John v. Whole Foods Mkt. Grp., Inc.*,
  858 F. 3d 732 (2nd Cir. 2017) ...............................................................................14

*Johnson v. Barr*,
  79 F. 4th 996 (9th Cir. 2023) .................................................................................19

*Kanan v. Thinx Inc.*,
  2021 WL 4464200 (C.D. Cal. June 23, 2021) .......................................................18

*Leoni v. State Bar*,
  39 Cal. 3d 609 (Cal. 1985) ......................................................................................3

*Levy v. Hu Prods., LLC*,
  2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) .....................................................10, 18

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ..................................................................................6

*Lopez v. Abbott Laboratories*,
  2023 WL 2657627 (S.D. Cal. Mar. 27, 2023) .......................................................24

*Madenlian v. Flax USA Inc.*,
  2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) .........................................................3

*Maisel v. S.C. Johnson & Son, Inc.*,
  2021 WL 1788397 (N.D. Cal. May 5, 2021) .........................................................25

*Maketa v. Target Corp.*,
  2024 WL 4311702 (N.D. Cal. Sept. 26, 2024) ......................................................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F. 3d 1025 (9th Cir. 2008) ................................................................................6

*Mattero v. Costco Wholesale Corp.*,
  336 F. Supp. 3d 1109 (N.D. Cal. 2018) .................................................................25

*McKinney v. Corsair Gaming, Inc.*,
  2022 WL 2820097 (N.D. Cal. July 19, 2022) ..........................................................3

*Moore v. EO Prods.*, LLC,
  2023 WL 6391480 (N.D. Cal. Sept. 29, 2023) ......................................................20

iv

*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) ................................................22, 23

*Nacarino v. Chobani, LLC*,
   668 F. Supp. 3d 881 ........................................................................24

*Pechanha v. The Hain Celestial Grp., Inc.*,
   2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ....................................8, 9, 10

*Reid v. Johnson & Johnson*,
   780 F. 3d 952 (9th Cir. 2015) ...........................................................5

*Ringler v. J.M. Smucker Co.*,
   2025 WL 1674390 (C.D. Cal. May 13, 2025) .......................................3

*Rodriguez v. Equal Exchange, Inc.*,
   2024 WL 1421971 (S.D. Cal. Mar. 31, 2024) ......................................23

*Rodriguez v. Mondelez Glob. LLC*,
   703 F. Supp. 3d 1191 (S.D. Cal. 2023) .........................................20, 24

*Salazar v. Target Corp.*,
   83 Cal. App. 5th 571 (Cal. Ct. App. 2022) .........................................6

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ..............................................23

*Sebastian v. Kimberly-Clark Corp.*,
   2017 WL 6497675 (S.D. Cal. Dec. 18, 2017)..................................21, 22

*Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125 (2020)............................................................3

*Stuve v. Kraft Heinz Co.*,
   2023 WL 184235 (N.D. Ill. Jan. 12, 2023) ........................................11

*Takahashi-Mendoza v. Cooperative Regions of Organic Prod. Pools*,
   673 F. Supp. 3d 1083 (N.D. Cal. 2023) ..............................................5

*Tarvin v. Olly Pub. Benefit Corp.*,
   756 F. Supp. 3d 797 (C.D. Cal. 2024)................................................5

*Thompson Pac. Construction, Inc. v. Amer. Int'l. Grp., Inc.*,
   2015 WL 5693704 (N.D. Cal. Sept. 29, 2015) ...................................20

v

*United States v. Hunter*,
    739 F. 3d 492 (10th Cir. 2013) ................................................................. 13

*Wallace v. Conagra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ................................................................. 17

*Williams v. Gerber Prods. Co.*,
    552 F. 3d 934 (9th Cir. 2008) ........................................................ 5, 6, 10

*Winans v. Ornua Foods North Am., Inc.*,
    731 F. Supp. 3d 422 (E.D.N.Y. 2024) ...................................................... 11

*Zakikhan v. Hyundai Motor Co.*,
    2021 WL 4805454 (C.D. Cal. Jun. 28, 2021) ........................................ 17

**STATUTES**

Cal. Health & Safety Code § 25249.6 ....................................................... 23

**RULES**

Fed. R. Civ. P. 8 ........................................................................................ 24

Fed. R. Civ. P. 8(d)(2) ................................................................................ 24

Fed. R. Civ. P. 9(b) .................................................................................... 13

Fed. R. Civ. P. 15(a) .................................................................................. 25

**REGULATIONS**

21 C.F.R. § 101.100(a)(3) .......................................................................... 11

**INTRODUCTION**

Defendant Chobani LLC's ("Chobani" or "Defendant") Motion to Dismiss, ECF No. 7 ("MTD"), Plaintiff's Complaint, ECF No. 1 ("Compl."), asks the Court to ignore Plaintiff's allegations, prematurely resolve factual issues for the jury, and, more problematically, disregard controlling Ninth Circuit case law.

Defendant's Motion rests predominantly on merits arguments inappropriate for resolution at this early stage. The gravamen of Plaintiff's complaint is that Chobani-branded yogurt products—including but not limited to Chobani's Nonfat Plain Greek Yogurt and Chobani's Whole Milk Plain Greek Yogurt (the "Products")—injured reasonable consumers, who were misled into believing that the Products' prominent front label claim, "Only Natural Ingredients," meant that the Products were free of toxic and synthetic ingredients, including plastic chemicals, such as di-2-ethylhexyl phthalate ("DEHP"), diethyl phthalate ("DEP"), dibutyl phthalate ("DBP"), and phthalate substitute called di-2-ethylhexyl terephthalate ("DEHT"). *See* Compl. ¶ 1. Defendant, however, insists that Plaintiff was not injured because no reasonable consumer would be deceived by its "Only Natural Ingredients" representations because, according to Defendant, either (1) the levels of phthalates in its Products are insignificant, or (2) they are not harmful. However, the Ninth Circuit's recent decision in *Bowen v. Energizer Holdings, Inc.*, 118 F. 4th 1134 (9th Cir. 2024) disposes of these arguments. Under *Bowen*, none of the Defendant's challenge can be resolved on a motion to dismiss because "the court must leave the resolution of material factual disputes to the trier of fact when the issue of [standing] *is intertwined* with an element of the merits of the plaintiff's claim." *Bowen*, 118 F. 4th at 1144 (cleaned up, emphasis added). Defendant's citations fail to overcome this controlling authority.

*Bowen* aside, Defendant's Motion urges the Court to resolve a host of factual questions, including a reasonable consumer's understanding regarding the plain meaning of its prominent label claim that the Products contain "Only Natural

Ingredients" and the accuracy of the PlasticList testing cited in Plaintiff's complaint, which found that the Products contain a host of toxic and synthetic ingredients plasticizers, including DEHP, DEP, DBP, and DEHT.  As explained below, neither issue is appropriate for resolution at this juncture.  At the same time, Defendant simply sidesteps Plaintiff's allegations that its Product packaging are made with #5 plastic, a form of plastic that uses phthalates in the production process.  Lastly, Defendant asks the court to override the Legislature and expand Proposition 65.

For the foregoing reasons, as will be explained below, Defendant's Motion should be denied in its entirety.

## ARGUMENT

## I.    PLAINTIFF ALLEGES ACTIONABLE MISREPRESENTATIONS

Defendant argues that Plaintiff has failed to plead both an affirmative misrepresentation and an omission by Defendant and that, regardless, no reasonable consumer would be deceived by Defendant's representations.  MTD at 7.  These arguments are premature.  But in any event, Plaintiff has alleged an affirmative representation which has a likelihood to mislead a reasonable consumer would be deceived by Defendant's representations.

### A.    "Only Natural Ingredients" Is An Affirmative Representation

First, Defendant broadly argues that Plaintiff has failed to allege any affirmative representation.  *See generally* MTD at 6-13.  That is meritless.  Here, Plaintiff has alleged that its prominent front-label claim, that the Products contain "Only Natural Ingredients," is an affirmative representation contradicted by the present of phthalate chemicals.  *See* Compl. ¶¶ 1-3.  Yet, in its argument to the contrary, Defendant never formally addresses Plaintiff's allegations that Defendant's "Only Natural Ingredients" claim is an affirmative representation or explains why that label claim does not qualify.

When "a business affirmatively makes [statements] about its product on its

2

labeling that are untrue … [s]uch affirmative misrepresentations are, by definition, 'fraudulent' and 'false.'" *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137-38 (Cal. Ct. App. 2020) (relying on *Leoni v. State Bar*, 39 Cal. 3d 609, 629 (Cal. 1985)).  Here, as noted, "Defendant affirmatively represents that its Products contain 'only natural ingredients.'" Compl. ¶ 29.  That representation exists on its label.  *See id.* ¶ 23.  "Ms. Wysocki and other consumers reasonably understood Defendant's affirmative representations and warranties to mean the Product is free of toxic plastic chemicals[.]"  *Id.*  But, recent third party testing found the Products contain toxic plastic chemicals, *see id.* ¶ 17, and indeed, "most Chobani yogurt cups—including Plaintiff's—are made from #5 plastic, known chemically as polypropylene.  And '[p]thalates are commonly used as a catalyst in the polymerization of propylene to polypropylene.'" *Id.* ¶ 31.  Though Defendant may take issue with Plaintiff's allegations that there are phthalates in the Products, "[i]f a reasonable consumer shares [Plaintiff's] understanding of the phrase 'All Natural' in this context, then the presence of the allegedly non-natural artificial and synthetic ingredients listed in the Complaint would render the labeling misleading and deceptive."  *Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *3 (C.D. Cal. Mar. 31, 2014).  Thus, the Court should deny Defendant's motion to dismiss on this point.

**B.    Plaintiff Has Also Alleged A Partial Omission**

Defendant primarily argues that the "presence [of phthalates] is not 'contrary' to a representation."  MTD at 14.  "The phrase 'contrary to a representation actually made by the defendant' is also known as a 'partial omission.'" *Ringler v. J.M. Smucker Co.*, 2025 WL 1674390, at *6 (C.D. Cal. May 13, 2025).  "Thus, a duty to disclose may be 'triggered' by affirmative representations." *McKinney v. Corsair Gaming, Inc.*, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022) (relying on *Hodsdon v. Mars, Inc.*, 891 F. 3d 857, 863 (9th Cir. 2018).  "Otherwise, defendants could make misleading statements that, in a vacuum, were true while leaving out

3

contradictory information," *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020), like claiming a product is comprised of only natural ingredients—free of any non-natural ingredients—while knowingly encasing it in a plastic made with non-natural phthalates.  Compl. ¶¶ 27, 33, 37.

## II.    THE NINTH CIRCUIT IN *BOWN* FORECLOSED DEFENDANT'S ARGUMENTS CONCERNING THE LEVELS OF PHTHALATES

Defendant contends that "trace amounts of a substance do not make a 'natural' claim misleading."  MTD at 10.  This challenge is foreclosed by *Bowen*.

Defendant's argument that no reasonable consumer would believe its product to be entirely free of phthalates necessarily implicates an element of her claim, intertwined with her Plaintiff's ability to allege an injury-in-fact.  After all, Plaintiff pleads an "an 'economic injury'—*i.e.*, 'that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation.'"  *Bowen*, 118 F. 4th at 1144 (quoting *Davidson v. Kimberly-Clark Corp.*, 899 F. 3d 956, 996 (9th Cir. 2018)) (some internal quotation marks omitted).  "Accordingly, there is a clear overlap between [Plaintiff's] asserted theory of Article III injury and the 'economic injury.'"  *Id.*  "To resolve the Article III standing issue—whether Defendant[] made false representations[,] or actionable non-disclosures[,] about [the product], would necessarily require [the Court] to resolve the merits issue—whether Defendant['s] representations and non-disclosures are actionable under California law.  Because the [standing] issue and substantive issues are so intertwined, resolution of genuinely disputed facts is inappropriate."  *Id.* (cleaned up).  The Ninth Circuit's holding in *Bowen* is clear: Defendant's challenges are not appropriately resolved at this early stage.

Further, none of Defendant's citations overcome *Bowen*.  As the Ninth Circuit explained, "[t]he district court's decision suffers from two errors.  <u>First</u>, the district court mistakenly required Bowen to show that Banana Boat was noncompliant with

4

FDA guidelines in order to establish injury under an economic-harm theory.  <u>Second</u>, to reach the conclusion that 0.29 ppm of benzene in sunscreen is 'safe,' the district court improperly weighed disputed evidence." *Id.* at 1146.  But more fundamentally, "the viability of [Plaintiff's] claims does not turn on her ability to prove the identified [compounds] in the product are actually unsafe, even though the issue in this motion is not standing, *per se*." *Bullard v. Costco Wholesale Corp.*, 2025 WL 1397509, at *2 (N.D. Cal. May 14, 2025) (citing *Bowen*, 118 F. 4th at 1147).

In addition, as alleged, "for plastic chemicals, low-dose effects may be even more harmful: '[the] paradigm of "the dose makes the poison" does not hold for … phthalates[.]  The unique properties of … phthalates, including low-does effects, nonmonotonic dose response curves [] and quick metabolism, disobey traditional principles of toxicology.'" Compl. ¶ 14.

## III.    *BOWEN* ASIDE, WHETHER A REASONABLE CONSUMER WOULD BE DECEIVED IS A QUESTION OF FACT FOR THE JURY

Defendant argues that "[s]imply, no reasonable consumer would understand 'Only Natural Ingredients' to promise that the Products are free from trace amounts of phthalates." MTD at 9.  But "California courts [] have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision" on a motion to dismiss.  *Williams v. Gerber Prods. Co*., 552 F. 3d 934, 938 (9th Cir. 2008).  Indeed, "it is generally not appropriate for resolution of a motion to dismiss except in 'rare situations' where the alleged violations of UCL, FAL, and CLRA are simply not plausible." *Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 803 (C.D. Cal. 2024) (quoting *Reid v. Johnson & Johnson*, 780 F. 3d 952, 958 (9th Cir. 2015).  Accordingly, "[c]ourts grant motions to dismiss on this ground *only where the advertisement itself mak[es] it impossible* for the plaintiff to prove that a reasonable consumer [is] likely to be deceived[.]" *Takahashi-Mendoza v. Cooperative Regions of Organic Prod. Pools*, 673 F. Supp. 3d 1083, 1095-96 (N.D.

Cal. 2023) (cleaned up) (emphasis added).  "This is because '[w]hat matters … is how consumers actually behave—how they perceive advertising and how they make decisions.  These are matters of fact, subject to proof that can be tested at trial[.]" *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (Cal. Ct. App. 2022). Accordingly, "'[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on [a motion to dismiss].'" *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).  "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938.  Plaintiff does this.

Here, Plaintiff alleges Defendant's affirmative "Only Natural Ingredients" representation led her to understand the Products are free of non-natural ingredients. Compl. ¶ 6.  Indeed, she understood "a product voluntarily claiming to be comprised of 'only natural ingredients' indeed be comprised of only natural ingredients." *Id.* ¶ 24.  "In fact, '[w]hen poll respondents don't see "natural" on food packaging, 52% of them assume the product must have chemicals in it.  Another 43% deduce that the product is highly processed.  Some 42% assumed that the food is unhealthy or full of preservatives.'  Inversely, 'consumers [are] vastly more likely to purchase a product with the natural label[.].'" *Id.*  Given that the Court must, "on a 12(b)(6) motion accept … as true and construe[s] … in the light most favorable to the non-moving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F. 3d 1025, 1031 (9th Cir. 2008), it can hardly be said—as a matter of law—that Defendant's "Only Natural Ingredients" representations is one of those "rare situations" warranting dismissal. *Salazar*, 83 Cal. App. 5th at 579.

Defendant retorts that the representation is not made in relation to phthalates.

MTD at 8, 10, 11.  Defendant's argument misses the point.  *Adler v. Altsleep, LLC*, 2023 WL 3080757, at *1 (C.D. Cal. Feb. 7, 2023) is instructive.

There, like here, the court considered defendant's argument that the "descriptor 'natural' may not have been meant to encompass all ingredients in the product, but rather to set the product apart from other similar products that contain chemicals consumers may be reluctant to apply to their bodies or ingest."  *Id.* at *6. Dismissing this argument, the *Adler* court concluded as follows:

> [T]he Court's task at this juncture is not to weigh which interpretation is more compelling, but to determine whether it is plausible that a reasonable consumer would interpret the "natural" descriptor on the Products' packaging as [Plaintiff] alleges in the FAC.  As noted above, this is an intensely factual inquiry, and implausibility can be decided as a matter of law only rarely.  It is plausible that a reasonable consumer would not expect a "natural" sleep aid product to contain as many synthetic ingredients as [Plaintiff] alleges the Products contain.

*Id.*  Accordingly, "[g]iven the factual nature of this inquiry and the products labels at issue, … this is an issue that goes to the merits of the case and is not appropriate for addressing" on a motion to dismiss.  *Corbett v. PharmaCare U.S., Inc.*, 2024 WL 1356220, at *19 (S.D. Cal. Mar. 29, 2024) (Simmons, Jr., J.).

## IV.    PLAINTIFF PLAUSIBLY ALLEGED THAT DEFENDANT'S "ONLY NATURAL INGREDIENT CLAIM" IS MISLEADING

Even if the Court were to resolve this issue at this early stage (it should not), Plaintiff has plausibly alleged that the statement "Only Natural Ingredients" is likely to deceive reasonably consumers.

"It is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural' or … 'natural' together with other terms implying 'all natural' to mean that a product does not contain any non-natural ingredients."  *Gasser v. Kiss My Face, LLC.*, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017); *see also Balser v. Hain Celestial Grp., Inc.*, 640 Fed. App'x 694, 696 (9th Cir. 2016) ("[T]he statements that the products

7

were … '100% vegetarian' could be taken as a claim that no synthetic chemicals were in the products[.]").[1]  And here, Defendant states the Products are made from "Only Natural Ingredients."  Merriam-Webster defines "only" to mean "alone in a class or category," "solely" or "exclusively."[2]  *See also Pechanha v. The Hain Celestial Grp., Inc.*, 2018 WL 534299, at *3 (N.D. Cal. Jan. 24, 2018) ("[A]lthough Defendants contend that 'Pure Natural' differs from '100% natural,' the phrase 'Pure Natural' may be tantamount to, or at least could reasonably be understood to mean, 'all natural' or '100% natural.'  Notably, 'pure' is defined by Merriam-Webster as . . . 'free from what vitiates, weakens, or pollutes,' and 'containing nothing that does not properly belong.' … The distinction between 'Pure Natural' and '100% natural' is not as sharp as Defendants contend.").

As alleged here, reasonable consumers like Plaintiff reasonably expect that "a product voluntarily claiming to be comprised of 'only natural ingredients' indeed be comprised of only natural ingredients."  Compl. ¶ 24.  "'[C]onsumers [are] vastly more likely to purchase a product with the natural label[.].' … To that end, 2 in 3 consumers, like Plaintiff 'say that clean label claims influence their purchasing decisions.'"  *Id.*  Plaintiff and reasonable consumers expect that Defendant's Products, which "affirmatively represents that [they] contain[] 'only natural ingredients' prominently on front and top label, while affirmatively disclaiming the presence of any artificial flavors and sweeteners, and preservatives, to be wholly free of any toxic plasticizers."  *Id.* ¶ 25.

---

[1] *See also Iglesias v. Ariz. Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer could understand similar 'natural' label claims, including '100% natural' … to mean that a product does not contain any non-natural ingredients."); *Corpuz v. Bayer Corp.*, 2023 WL 2292579, at *4 (S.D. Cal. Feb. 28, 2023) ("Numerous courts in the Ninth Circuit have found it plausible that a reasonable consumer would understand similar labeling involved 'natural' to mean that the product does not contain any non-natural ingredients.").

[2] MERRIAM-WEBSTER DICTIONARY, *Only*, available https://www.merriam-webster.com/dictionary/only?src=search-dict-box.

8

1
2
3
4
5
6
7
8
9
10
11

Indeed, Judge Cheeks in the Southern District of California recently found this Defendant's "Only Natural Ingredients" claim plausibly misleading where the plaintiffs complained that the presence of "stevia leaf extract and monk fruit extract … ha[d] undergone transformative manufacturing processes that would cause a reasonable consumer to consider them not 'natural.'" *Albrigo v. Chobani, LLC*, 2025 WL 1930007, *4 (S.D. Cal. July 11, 2025). Surely, if "stevia root and monk fruit" which "begin as natural foods, but the manufacturing process required to produce the 'concentrate powder' or 'final powder product' used in the Products does not comport with a reasonable consumer's understanding of what constitutes a 'natural' ingredient," *id.* at *9, synthetic phthalate compounds do not either. *See* Compl. ¶¶ 7, 21.

12
13
14
15
16
17
18
19
20
21
22

Defendant responds that its representations concerning "information about qualities that the Products do possess, such as the lack of artificial flavors, sweeteners, and preservatives … does not prohibit the inclusion of, or deceive consumers, regarding other (truthful) product qualities[.]" MTD at 9. But, because "[t]he FAL, CLRA, and UCL prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," *Cesta v. Trader Joe's Co.*, 2018 WL 6075352, at *5 (C.D. Cal. Aug. 28, 2018) (cleaned up), Defendant's argument "would not preclude an assumption that, in addition to these four prominent substances, there are no other non-natural ingredients." *Pecanha*, 2018 WL 534299, at *4.

23
24
25
26
27

*Pecanha* is on point. There, the defendants argued that because the "label also display[ed] prominently the following phrase: 'NO ALUMINUM, PARABENS, PHTHALATES, OR PROPYLENE GLYCOL' … [w]hen viewed 'as a whole,' the reference to 'natural' or 'naturally' refers to the fact that there is 'no aluminum, parabens, phthalates, or propylene glycol' in the deodorants,' … not that the

28

9

deodorant product is 100% natural in all respects." 2018 WL 534299, at *4. (capitalization in original). Rejecting this argument, the court explained that "while a reasonable consumer might plausibly so interpret the label, that does not mean that a reasonable consumer could not have a different interpretation. For instance, it is plausible that a reasonable consumer could view the 'no aluminum' language as a *reinforcement or illustrative* of the term 'natural'[.]" *Id.* (emphasis in original). Courts, including the Ninth Circuit, have applied this common-sense line of thinking. *See, e.g., Williams*, 552 F. 3d at 939 ("[T]he statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false.'"); *Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 945 (C.D. Cal. 2025) ("Courts have held that claims of simplicity and lists of undesired ingredients that are not present can imply diligence on the part of the Defendant that would suggest to a reasonable consumer that heavy metals are not present."); *Levy v. Hu Prods., LLC*, 2024 WL 897495, at *7 (S.D.N.Y. Mar. 1, 2024) (rejecting defendant's argument that "[o]n the list of 'undesired ingredients,' … a reasonable consumer would not interpret the list 'as a promise that other, unidentified things (i.e., lead) are also not in the product.' [because] the list at least implies that Hu is concerned with—and diligent about—removing unwanted ingredients and contaminants from the Products").

Defendant's mostly out-of-circuit citations do not require a different result. First, unlike here, the representations at issue in *George v. Starbucks Corp.*, 2020 WL 6802955, *1 (S.D.N.Y. Nov. 19, 2020), *see* MTD at 9, did not "communicate anything about the use of pesticides in Starbuck's stores." *George v. Starbucks Corp.*, 857 Fed. App'x. 705, 706 (2nd Cir. 2021). "Here, by contrast, [defendant's] alleged misrepresentations concern the Products themselves, so no interpretive leap is required." *Levy*, 2024 WL 897495, at *7. Defendant's "Only Natural Ingredients"

claim here is printed directly on the Product's front label and cannot be descriptive of anything but the Products such claim is printed on.  *See* Compl. ¶ 1.

*Richburg v. Conagra Brands, Inc.*, a case out of the Northern District of Illinois, is also inapposite.  *See* MTD at 9-10.  There, the court granted dismissal because "such an interpretation is implausible in light of the FDA's exemption of migratory substances from the mandates list of 'ingredients' on food product packing" where defendant argued that "reasonable consumers would not consider PFAS to be an ingredient because the FDA regulates PFAS 'differently from traditional food ingredients.'"  2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023).  But, 21 C.F.R. § 101.100(a)(3) applies to "incidental additives that are present in a food *at insignificant levels*." (emphasis added).  And "[t]he court cannot determine on the pleadings alone that this exemption applies, because whether phthalates are present only at an 'insignificant level' is a question of fact, yet to be resolved." *Stuve v. Kraft Heinz Co.*, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023).  Critically, the *Richburg* court, in the Northern District of Illinois, was not bound by the Ninth Circuit's decision in *Bowen*, which overturned the district court's dismissal where "the district court mistakenly required Bowen to show that Banana Boat was noncompliant with FDA guidelines in order to establish injury under an economic-harm theory."  118 F. 4th at 1148.

*Bowen* aside, "[t]his question is factual and not suited to resolution on a 12(b)(6) motion to dismiss, as the few other courts to have addressed the issue generally recognize."  *Winans v. Ornua Foods North Am., Inc.*, 731 F. Supp. 3d 422, 431 (E.D.N.Y. 2024).  Indeed, courts in the Southern District of California generally find that whether the amount is "insignificant" is a question of fact.  *See, e.g., Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 829 (S.D. Cal. 2024) ("Whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding.") (cleaned up) (emphasis in original); *Holt v.*

11

*Foodstate, Inc.*, 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015) (same).

### A. Whether The Amount Of Phthalates In Defendant's Products Is Safe Is A Question Of Fact For The Jury

Defendant argues that "Plaintiff fails to plausibly allege that the levels of phthalates in the Products render them unhealthy or unsafe." MTD at 11. This is a red herring. "Though [Defendant] may be correct on the merits about the safety of its products, that is a disputed fact inappropriate to resolve at this stage of litigation." *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1169 (N.D. Cal. 2022). Indeed, *Bowen* disposes of this argument for precisely the same reason. *See Bowen*, 118 F. 4th at 1146 ("Second, to reach the conclusion that 0.29 ppm of benzene in sunscreen is 'safe,' the district court improperly weighed disputed evidence.").

Defendant points to a host cites it claims supports its point. *See* MTD at 11-13. They don't. For example, in *Bullard v. Costco Wholesale Corp.*, the court the court dismissed the complaint for failing to identify the specific PFAS compounds. *Bullard*, 2025 WL 506271, at *2 ("'PFAS' is not a magic word that can be invoked to open automatically the doors to federal litigation."). Plaintiff here names the specific compounds found. *See* Compl. ¶¶ 18. Notably, Defendant neglects to mention that the *Bullard* court denied the defendant's motion to dismiss her amended complaint once "Bullard ha[d] alleged the three specific PFAS chemicals she contends were found in the product, and in what quantities." *Bullard*, 2025 WL 1397509, at *3. As part of its analysis, the *Bullard* court also correctly observed that "[i]n evaluating standing, the *Bowen* trial court had weighed the evidence as to whether the quantity of benzene allegedly in the sunscreen was actually unsafe. The Ninth Circuit concluded that inquiry was misdirected[.]" *Id.* (relying on *Bowen*, 118 F. 4th at 1146). Relying on *Bowen*, the *Bullard* court explained that "[d]efendants correctly observe *Bowen* expressly addresses only what must be pleaded to support standing—a subject not directly implicated by the current motion to dismiss. … Nevertheless, the viability of Bullard's claims does not turn on her ability to prove

12

1    the identified PFAS in the product are actually unsafe, even though the issue in this

2    motion is not standing, *per se*." *Id.*  And as the *Bullard* court explained, "[t]he

3    Denial Order noted that *Bowen* went on to hold the district court had erred in

4    assuming that plaintiff had any obligation to prove the quantity of the alleged

5    harmful substances in dispute … was actually unsafe.  For the same reason, [the

6    *Bullard*] defendants' insistence that plaintiff must do more here to show the

7    identified [chemicals] are actually unsafe is without merit." *Bullard*, 3:24-cv-03714-

8    RS, ECF No. 48 at 3 (N.D. Cal. July 29, 2025) (denying defendants' motion for

9    reconsideration of order denying motion to dismiss).  Because these merits issues are

10    intertwined with Plaintiff's theory of injury, they cannot be decided now.

11    **B.    Plaintiff's Allegations Comport With Rule 9(b)**

12    Defendant argues, in passing, that the allegations of Plaintiff's complaint fail

13    to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *See* MTD at

14    7.  But, critically, Defendant's conclusory fails to explain why that is.  Nonetheless,

15    Plaintiff has complied with Rule 9(b) because she has alleged who, what, where,

16    when, and how Defendant's "Only Natural Ingredients" claim is misleading." *See*

17    Compl. ¶¶ 29-40; *see also Albrigo*, 2025 WL 1930007, at *7 (finding pleading

18    identifying "who," "what," "when," "where," and "how" allegations sufficient for

19    9(b).").  And, because Defendant's argument is cursory and undeveloped, it is

20    waived.  *See United States v. Hunter*, 739 F. 3d 492, 495 (10th Cir. 2013) (cursory

21    argument not meaningfully developed by any analysis or citation is deemed

22    waived.); *Badie v. Bank of America* 67 Cal. App. 4th 779, 784-785 (1998).

**V.    PLAINTIFF PLAUSIBLY ALLEGES PHTHALATES ARE PRESENT IN DEFENDANT'S PRODUCTS**

24    Defendant argues that "Plaintiff does not plausibly allege the presence of these

25    substances[.]" MTD at 13.  Not so.  Plaintiff's allegations are based on two key

26    allegations: the PlasticList testing finding phthalates, Compl. ¶12, and the allegation

27    that Plaintiff's product is made with #5 plastic, which is commonly made using

28

13

phthalates. *Id.* ¶ 31. In other words, Plaintiff's claims rely on independent testing finding impurities and evidence of its source. Accepting these allegations as true, these together permit a plausible inference that her Product contained toxic phthalates. Defendant dedicates the entirety of its argument to questioning the testing. But, as explained in greater detail below, "[a]t the pleading stage, [Plaintiff] need not prove the accuracy of the [] findings or the rigor of its methodology; [she] need only generally allege facts that, accepted as true, make [their] alleged injury plausible." *John v. Whole Foods Mkt. Grp., Inc.* 858 F. 3d 732, 737 (2nd Cir. 2017). *See* Argument, § VI. B, *supra*. Moreover, Defendant's argument *entirely* ignores Plaintiff's allegations about the #5 plastic.

## VI.    PLAINTIFF HAS STANDING TO ASSERT HER CLAIMS

Defendant argues that Plaintiff lacks standing because (1) "Plaintiff must plausibly allege … that the Product she purchased was worth less because it contained or risked containing phthalates. She does not," MTD at 22, and (2) "Plaintiff fails to allege that the Product she purchased plausibly contained phthalates[.]" *Id.* at 23. Defendant is wrong on both fronts. Indeed, "Plaintiff has alleged an injury in fact sufficient to confer standing because she asserts that she overpaid for the Products based on her reliance on a false representation." *Albrigo, et al.*, 2025 WL 1930007, *11 (finding standing based on the same "Only Natural Ingredients" representation).

### A.    Plaintiff's Plausibly Alleges Economic Injury

As a threshold matter, the Ninth Circuit's recent decision in *Bowen*, 118 F. 4th at 1146 disposes of Defendant's arguments. Reversing the district court, the Ninth Circuit in *Bowen* explained that:

> [A]lthough Bowen discarded the Ultra Sport 100 bottle that she purchased without testing it, she alleges that Ultra Sport 100 has been tested by Valisure and found to contain at least 0.1 ppm of benzene. Had Bowen "known that any amount of benzene was or risked being contained in the sunscreen products she purchased, she

14

would not have purchased and used the products at all or would have paid significantly less for them." Finally, Bowen alleges that she "suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct, as alleged herein." … [T]these allegations outline a theory of economic injury that qualifies as an injury in fact under established Article III standing caselaw.

*Id.* at 1146-47.

Here, Plaintiff alleges that she "relied on prominent representations on the Product's labeling and packaging that the Product contains 'Only Natural Ingredients.'" Compl. ¶ 6. "Defendant's untrue representations were part of the basis of the bargain in that she would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known. Thus, as a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries." *Id.* This is enough.

Defendant demurs on several points; each are red herrings. <u>First</u>, it argues that "Plaintiff fails to allege Chobani made promises the Products contain 'no phthalates' or that phthalates are 'ingredients' capable of being potentially contrary to a 'Only Natural Ingredients' Claim.'" As discussed above, *see* Argument, § III-IV, *supra*, that is wrong. <u>Second</u>, Defendant argues that because "[t]he testing was performed on a different version of the Product [] than the one referenced in the Complaint … based on Plaintiff's allegations, it could impact phthalate levels. … Plaintiff has not alleged that the phthalate risk, if any, would not be equivalent to the amount reflected in the testing of the 32 ounce containers." This is also wrong. Plaintiff has alleged facts that permit a reasonable inference that *her* cup contained phthalates. In addition to the third party testing finding phthalates, Compl. ¶¶ 17-22, Plaintiff also alleges that "most Chobani yogurt cups—*including Plaintiff's*—are made from #5 plastic, known chemically as polypropylene. And '[p]thalates are commonly used as a catalyst in the polymerization of propylene to polypropylene.'" *Id.* ¶ 31. (emphasis

15

added).  Defendant never actually addresses the second point.

Moreover, this nearly identical argument was disposed of in *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164 (N.D. Cal. 2022).  There, Walmart argued that "plaintiffs cannot show injury in fact because they do not allege that the products they purchased or consumed contained heavy metals, they do not allege that they suffered physical injuries, and they cannot assert economic injury if they cannot show the products contained metals."  *Id*. at 1172.  The plaintiffs' allegations were "based on an article published … by Consumer Reports, which found that one-third of the herbs and spices it tested contained unsafe levels of arsenic, lead, and cadium [sic]."  *Id.* at 1169.  The court concluded that their "allegations that the risk existed and that they would not have purchased the products had they known the risk are plausible.  The plaintiffs successfully pleaded economic injury for standing."  *Id.* at 1173.  Likewise here, "Plaintiff had no reason to believe that the Product contained, or risked containing, in a single serving, unsafe levels of phthalates.  As such, [she] reasonably understood Defendant's representations and warranties to mean the Product is free of non-natural toxic chemicals, like phthalates and therefore expected that the Product can be purchased and consumed as marketed and sold.  Defendant's untrue representations were part of the basis of the bargain in that she would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known."  Compl. ¶ 6.  As the Ninth Circuit has explained, "[t]o properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation."  *Davidson v. Kimberly-Clark Corp*., 889 F. 3d 956, 965-66 (9th Cir. 2018).  Accordingly, Defendant's argument that inconsistencies in testing of a product plaintiff *did not purchase* negates standing falls flat.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant cites two cases in support of its arguments on this point: *Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454 (C.D. Cal. Jun. 28, 2021), and *Wallace v. Conagra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014). *See* MTD at 24. But neither citation supports Defendant's position. Indeed, Defendant mischaracterizes the holding of both cases. <u>First</u>, in *Zakikhan*, the court did not hold that the plaintiff did not have standing. The court, taking the minority view, was actually explaining that "even if the Plaintiffs were able to establish Article III standing to assert claims for alleged injury arising out of a product they did not purchase, they would not have statutory standing to assert them. This is because the substantial-similarity test is also inconsistent with the statutory standing requirements under the UCL, FAL, and CLRA." *Zakikhan*, 2021 WL 4805454, at *6. As such, the court found that the plaintiff lacked standing to bring "claims based on Class Vehicles they did not purchase or lease[.]" *Id.* The court was not making the point Defendant suggests: that the tested products were too dissimilar to that one Plaintiff purchased such that the court could not plausibly infer that the testing was applicable to Plaintiff's Product, thus negating any injury giving rise to Article III standing. *See* MTD at 24.

<u>Second</u>, *Wallace v. ConAgra Foods, Inc.*—a decade-old Eight Circuit decision—cannot overcome the controlling Ninth Circuit decision in *Bowen*. Regardless, there, the plaintiffs "admit[ed] that 'it is impossible for any reasonable consumer to detect' whether purportedly kosher meat is non-kosher." *Wallace*, 747 F. 3d. at 1030. That is not the case here, where Plaintiff alleges that "most Chobani yogurt cups—including Plaintiff's—are made from #5 plastic, known chemically as polypropylene. And '[p]thalates are commonly used as a catalyst in the polymerization of propylene to polypropylene.'" Compl. ¶ 31. Defendant all but ignores this allegation. Nevertheless, paired with testing finding those phthalates in Defendant's products, it is plausible the Products indeed contained them as alleged.

1

**B.    Questions About Testing Efficacy Are Fact Questions Not Appropriate For Resolution On A Motion To Dismiss**

Defendant argues that "PlasticList's testing does not support the inference that there was even a *risk* of phthalates in the Product Plaintiff purchased, and there it cannot support her conclusion that she was injured by her purchase."  MTD at 24 (emphasis in original).  This is a red herring.  <u>First</u>, Defendant's argument seeks premature resolution of fact questions.  <u>Second</u>, Defendant ignores the entirety of Plaintiff's allegations.

<u>First</u>, "such issues of reliability … are better addressed at later stages of the case."  *Maketa v. Target Corp.*, 2024 WL 4311702, at *2 (N.D. Cal. Sept. 26, 2024) (dismissed on other grounds).  *See also Hamman v. Cava Grp., Inc.*, 2023 WL 3450654, at *5 (S.D. Cal. Feb. 8, 2023) ("[B]ecause Plaintiffs allege that based on the Consumer Reports article … and their own tests, the Products are likely to contain PFAS and that PFAS are dangerous even in small quantities.  Overall, Defendant's arguments largely go to the merits of Plaintiffs' claims, which is inappropriate at the motion to dismiss stage."); *Kanan v. Thinx Inc.*, 2021 WL 4464200, at *6 (C.D. Cal. June 23, 2021) ("[T]he Court finds that Thinx's arguments about the accuracy of the alleged testing … are inappropriate at the motion to dismiss stage."); *Levy*, 2024 WL 897495, at *4 ("[T]he Court declines to delve into the scientific validity of the study, which [defendant] will have ample opportunity to challenge at summary judgment and trial."  Drawing all inferences in [plaintiff's] favor, the [F]AC permits the reasonable inference that Levy purchased at least one Product containing lead."); *Boyd*, 762 F. Supp. 3d at 940 ("Defendant argues that Plaintiffs do not and cannot plausibly plead the reliability or accuracy of the testing of the ConsumerLabs article. … [T]he Court must accept as true the allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff[.] … Plaintiffs' allegations here regarding the testing conducted by ConsumerLabs.com allow the Court to plausibly infer that the Products purchased by

18

1   Plaintiffs during the Class Period contained unsafe levels of cadmium."). Questions

2   about the reliability and efficacy of the testing is an issue for a later stage.

3          Selectively quoting, Defendant claims the PlasticList article purportedly

4   "disclaims reliability." MTD at 24. That is false. Defendant neglects to include the

5   entire quote: "Consider this a snapshot of our raw test result, suitable as a starting

6   point and inspiration for further work." Defendant Chobani, LLC's Request For

7   Judicial Notice ("RJN"), ECF No. 7-2, at 43. The closest the report gets is to say the

8   results "'***may*** not be representative of actual product contents[.]'" *Id.* (emphasis

9   added). As the Report further states, PlasticList "called more than 100 labs to find

10  one that had the experience, quality standards, and … painstakingly validated the

11  results[.] Over time our effort expanded to nearly 300 food products. It took half a

12  year and cost about $500,000. We were lucky to find a lab with extensive

13  experience in food testing, and to secure the assistance of excellent analytical

14  chemists and epidemiologists who educated us and tried to ensure that our work met

15  a high bar of accuracy and transparency." RJN at 43-44. *See also* Compl. ¶ 12.

16  Regardless of who is correct, at this stage, "contested evidence is viewed in the light

17  most favorable to the nonmoving party." *Johnson v. Barr*, 79 F. 4th 996, 999 (9th

18  Cir. 2023). Questions about the efficacy and reliability—as Defendant's own exhibit

19  shows—are fact questions. This is what discovery is for. For example, did

20  PlasticList put the disclaimer on its website in response to litigation or had it always

21  been there? What methods were taken to verify the results before they were

22  published? None of these questions can be answered here.

23          Second, Defendant proceeds as though the PlasticList testing is the *only*

24  allegation supporting an inference that the Product contains phthalates. Again, it

25  ignores the #5 plastic allegation. *See* Compl. ¶ 31 ("most Chobani yogurt cups—

26  including Plaintiff's—are made from #5 plastic, known chemically as polypropylene.

27  And '[p]thalates are commonly used as a catalyst in the polymerization32 of

28

19

propylene to polypropylene.'"); *id.* ¶ 27 ("And, most, if not all, containers are made from the same #5 Plastic that is likely the source of some, if not all, of the phthalates leaching into the Product.").  These allegations alone, read in the light most favorably to the nonmoving party, support a plausible inference that the Product Plaintiff purchased *risks* containing phthalates.  Indeed, the testing allegations, on their own, are sufficient.  *See e.g., Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) ("Plaintiffs need not allege that the specific Products they purchased had unsafe levels of lead and/or cadmium, but may simply aver facts from which this Court can make such reasonable inference.") (cleaned up).

### C.    Plaintiff Has Standing To Bring Claims For Products Substantially Similar To The One She Purchased

In a footnote, Defendant argues that "[t]o the extent Plaintiff attempts to assert standing as to products she did not purchase, this argument also fails."  MTD at 23 n.3.[3]  Once again, Defendant is wrong.

First, "[a]nalyzing the sufficient similarity of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23."  *Moore v. EO Prods*., LLC, 2023 WL 6391480, at *4 (N.D. Cal. Sept. 29, 2023) (cleaned up).  Defendant argues that "Plaintiff has not sufficiently alleged that products with different packaging contain similar risk and/or levels of phthalates.  Indeed, the testing she relies on shows no pattern on which to base any such inference."  MTD at 23, n. 9.  But Defendant's argument goes to "the reliability or accuracy of the testing of the [PlasticList] article.  At this stage, the Court must accept as true the allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff[.]"  *Boyd*, 762 F. Supp. 3d

---

[3] Arguments in footnotes are generally disfavored.  *See e.g., Cal. Coalition for Women Prisoners v. United States*, 723 F. Supp. 3d 712, 733, n.41 (N.D. Cal. 2024); *Thompson Pac. Construction, Inc. v. Amer. Int'l. Grp., Inc.*, 2015 WL 5693704, at *5, n.5 (N.D. Cal. Sept. 29, 2015) ("I will not address [the] 'pass-through' argument made in a footnote and for the first time in its reply.").

at 940.  And here, in addition to the allegations of what testing found, Compl. ¶¶ 17-22, Plaintiff also alleges that, common to the individual cups, "most Chobani yogurt cups—including Plaintiff's—are made from #5 plastic, known chemically as polypropylene.  And [p]halates are commonly used as a catalyst in the polymerization of propylene to polypropylene."  *Id.* ¶ 31.  With these allegations, and without addressing the merits of the third-party testing, the Court can plausibly infer that there is—at minimum—a similar risk or phthalate level across all its Products.  Nonetheless, this is not a question the Court need answer here.  *See, e.g., Sebastian v. Kimberly-Clark Corp.*, 2017 WL 6497675, at \*7 (S.D. Cal. Dec. 18, 2017) ("Any contentions regarding differences between the products or representations about the products are best addressed at the class certification stage under Rule 23.").

If the Court addresses the issue here, "[i]n the Ninth Circuit, … [t]he majority of courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."  *Iglesias v. Ariz. Beverages USA, LLC*, 2023 WL 4053803, at \*4 (N.D. Cal. June 16, 2023) (cleaned up).  "Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar."  *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1283 (N.D. Cal. 2024).

Here, Plaintiff alleges that "Chobani's other products heavily feature cultured nonfat milk, cane sugar, water, and natural flavors and are thus made with the same, or nearly the same, ingredients."  Compl. ¶ 26.  "[T]he packaging for each uses nearly identical trade dress, varying only in the color specifying the flavor with occasional additions of fruit images.  And, most, if not all, containers are made from

21

the same #5 Plastic that is likely the source of some, if not all, of the phthalates leaching into the Product." *Id.* ¶ 27. "Critically, the packaging for all of Defendant's Products specify that [they] are composed of 'Only Natural Ingredients.'" *Id.* ¶ 28. These allegations are sufficient. *See also, Garrison v. Whole Foods Mkt. Grp., Inc.*, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (finding substantial similarity where "[e]ach label contains the same challenged 'All Natural' representation in the same font in the same location. [] Plaintiffs allege that each is false in the same way. The unpurchased products thus do not implicate a significantly different set of concerns than those purchased by the named plaintiffs.") (cleaned up); *Sebastian*, 2017 WL 6497675, at *6 (finding sufficient similarity where "Plaintiffs' allegations regarding the misrepresentations in advertising and labeling encompass all of the configurations of Huggies Natural Care Baby Wipes. Plaintiffs allege that the various configurations of the Huggies Natural Care Baby Wipes contain the same 'non-natural, synthetic, and/or artificial ingredients'").

Defendant's citations do not support its arguments on this point. First, in *Cortez v. Handi-Craft Co., Inc.*, 2025 WL 1452561 (N.D. Cal. Apr. 29, 2025), the court found no substantial similarity because "plaintiffs [] acknowledge that *only* baby bottles are ordinarily used to prepare and deliver heated formula. In other words, Plaintiffs' own allegations suggest that two Products are not exposed to similar amounts of heat during ordinary use, and thus do not lead similar amounts of microplastics and pose similar safety risks." *Id.* at *10 (emphasis in original). Here, Plaintiff alleges that her cup, and most, if not all, of Defendant's yogurt cups are made with #5 plastic which uses phthalates in the polymerization process. *See* Compl. ¶¶ 26-28. And concerning dosages, "for plastic chemicals, low-dose effects may be even more harmful[.]" *Id.* ¶ 14.

Second, *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023), is distinguishable because the products plaintiffs sought to sweep into their

22

claims were made of "different ingredients, flavors, forms … and different amounts of melatonin and degradation rates." *Id.* at 1131 (cleaned up).  Again, here, "Chobani's other products heavily feature cultured nonfat milk, cane sugar, water, and natural flavors and are thus made with the same, or nearly the same, ingredients."  Compl. ¶ 26.  Plaintiff has standing to bring claims for those Products.

## VII.    PROPOSITION 65 IS NOT RELEVENT TO PLAINTIFF'S CLAIMS

Defendant argues that because the levels detected do not meet the levels for a required warning under Proposition 65, Plaintiff's consumer protection claims must be dismissed.  MTD at 16.  This is wrong.

Proposition 65 is specifically concerned with chemicals "known to the state to cause cancer" or "reproductive toxicity."  Cal. Health & Safety Code § 25249.6.  "[T]he Ninth Circuit has characterized the rule against using the UCL to plead around an absolute bar to relief as 'rather narrow.'"  *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 793 (N.D. Cal. 2015) (quoting *Chabner v. United of Omaha Life Ins. Co.*, 225 F. 3d 1042, 1048 (9th Cir. 2000)).  This is because "[w]ith Proposition 65, the Legislature was focused on the risks of cancer and reproductive toxicity.  It neither considered nor proscribed suits based on a litany of other harms[.] … [C]onstr[ing] Proposition 65's bar broadly—rather than narrowly[, would] frustrate the purpose of Proposition 65 itself, which was designed to protect the public.'"  *Rodriguez v. Equal Exchange, Inc.*, 2024 WL 1421971, at *6 (S.D. Cal. Mar. 31, 2024) (cleaned up).  "A more sweeping litigation bar would insulate manufacturers from damages caused by heavy metals at levels unsafe for, say, the liver or kidney, so long as they are deemed safe for cancer and reproductive toxicity.  In other words, the Court would be protecting the manufacturer at the *detriment* of the public—and without any authorizing language in Proposition 65 justifying such an expansive result."  *Id* (emphasis added).

Plaintiff alleges phthalates cause endocrine disruption, Compl. ¶ 20,

developmental harm, *id.*, immunological and renal harm, *id.* ¶ 19, and hormone disruption, *id.* ¶ 22, harms "outside the scope of Proposition 65." *Rodriguez*, 703 F. Supp. 3d at 1208.

## VIII.  PLAINTIFF HAS STATED CLAIMS FOR EQUITABLE RELIEF

Defendant argues that Plaintiff's "UCL and FAL claims and her claim for equitable relief under the CLRA should be dismissed" because she "seeks monetary damages in her Complaint [and] fails to explain why such an award would be inadequate to remedy her alleged injuries." MTD at 21.  Plaintiff concedes her claims for equitable relief under the UCL and FAL, but requests leave to amend.

However, at the pleading stage, Plaintiff's claim for unjust enrichment survives.  This is because Fed. R. Civ. P. 8(d)(2) allows the plaintiff to "set out 2 or more statements of a claim … alternatively … either in a single count … or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any of them is sufficient."  Here, Plaintiff's claim for unjust enrichment and restitution is "alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8."  Compl. ¶ 98.  *See also Lopez v. Abbott Laboratories*, 2023 WL 2657627, at *4 (S.D. Cal. Mar. 27, 2023) ("*Sonner* does not purport to negate this.  The [] *Sonner* [plaintiff] moved to amend the complaint to reallege her claim for damages. … Because the instant case is at the pleading stage and not on the eve of trial, Plaintiff can allege legal and equitable claims in the alternative."); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895-97 (denying dismissal of restitution claim where it may be "revisited at a later stage.").

## IX.    PLAINTIFF STATED A BREACH OF EXPRESS WARRANTY CLAIM

Finally, Defendant argues that "Plaintiff's express warranty claim also fails because Plaintiff does not identify any statement amounting to a warranty that the Products are free of trace phthalates."  MTD at 25.  Not so.  "Under California law, a plaintiff asserting a breach of warranty claim must allege facts sufficient to show

that: (1) the seller's statements constitute an affirmation of fact or promise ***or a description of the goods***; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Maisel v. S.C. Johnson & Son, Inc.*, 2021 WL 1788397, at *11 (N.D. Cal. May 5, 2021) (cleaned up) (emphasis added). Whether "[s]tatements on a product's label are part of the bargain between buyer and seller, [] and create express warranties, [] Courts look to the context of the statement to determine whether an express warranty has been made, including the label." *Id*. As such, "courts liberally construe sellers' affirmations of quality in favor of injured consumers." *Id.* (cleaned up). *See e.g., Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1115–16 (N.D. Cal. 2018) (holding the "environmentally responsible" claim on cleaning products constitutes an affirmative fact or promise that the products do not have "unnatural, harmful, and toxic chemicals").

As alleged, "[c]onsumers, like Plaintiff, [] expect that a product which affirmatively represents that it contains 'only natural ingredients' prominently on front and top label, while affirmatively disclaiming the presence of any artificial flavors and sweeteners, and preservatives, to be wholly free of any toxic plasticizers." Compl. ¶ 25. Plaintiff relied on this affirmation which formed the basis of the bargain. *Id.* ¶ 6. This is sufficient.

In sum, given that "courts … regularly hold that stating a claim under California consumer protection statutes is sufficient to state a claim for express warranty[,]" Plaintiff has stated a claim for breach of express warranty. *Maisel,* 2021 WL 1788397, at *11 (cleaned up).

## X. CONCLUSION

Defendant's Motion should be denied in its entirety. However, if the Court grants Defendant's motion, Plaintiff respectfully requests leave to amend. *See Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F. 3d 1048, 1051 (9th Cir. 2003) ("[t]his policy is to be applied with extreme liberality.").

25

Dated: July 31, 2025

**BURSOR & FISHER, P.A**.

By:   /s/ *Joshua B. Glatt*
       Joshua B. Glatt

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jvenditti@bursor.com
         jglatt@bursor.com

*Attorneys for Plaintiff and the Putative Class*

26