UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY WYSOCKI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOBANI, LLC,<br><br>Defendant. | Case No.: 25-cv-00907-JES-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>**[ECF No. 7]** |

Before the Court is Defendant Chobani, LLC's ("Defendant" or "Chobani") Motion to Dismiss ("Motion") pursuant to Federal Rules of Civil Procedure ("Rule(s)") 9(b), 12(b)(1), and 12(b)(6) for failure to plead with particularity, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted. ECF No. 7. Plaintiff Amy Wysocki's ("Plaintiff" or "Wysocki") Complaint asserts five counts against Defendant: (1) Violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (2) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (3) Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; (4) Breach of Express Warranty; and (5) Unjust Enrichment/Restitution. ECF No. 1, ("Compl.") ¶¶ 50-101. Wysocki asserts Counts 1-3 on behalf of herself and a purported California class of similarly situated

plaintiffs. *Id*. ¶¶ 50-84. Counts 4 and 5 are asserted on behalf of Wysocki and a purported national class of similarly situated plaintiffs. *Id*. ¶¶ 85-101. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss. Leave for Plaintiff to file a First Amended Complaint ("FAC") is **GRANTED**. Plaintiff must file the FAC no later than **May 1, 2026**.

## I.  BACKGROUND

### A. Factual Background

Plaintiff brings this putative false advertising class action against Chobani, who makes Greek Yogurt Nonfat Plain and Greek Yogurt Whole Milk Plain (collectively, the "Products"). ECF 7-1 ("Mot.") at 7. The Products' ingredients are natural or derived from natural sources and are labeled with an "Only Natural Ingredients" representation. *Id*. Thus, Plaintiff alleges that in 2023, she was harmed by purchasing Chobani's Greek Yogurt Nonfat Plain product because PlasticList, an online organization, published an unidentified laboratory's report, claiming to have tested the Products in 2024, finding trace levels of four phthalates (i.e., Di-(2-ethylhexyl) phthalate ("DEHP"), Dibutyl phthalate ("DBP"), Bis(2-ethylhexyl) terephthalate ("DEHT"), and Diethyl phthalate ("DEP")). *Id*. at 9; ECF No 7-2, ("RJN"), at 20.

Phthalates are "a group of chemicals [the U.S. Food and Drug Administration ("FDA") has deemed to be used safely] in hundreds of products, such as . . . food packaging, pharmaceuticals, blood bags and tubing, and personal care products." Mot. at 9; RJN at 18; *see, e.g.*, 21 C.F.R. § 175.105 (adhesives/DEHP); *Id*. § 175.300 (resinous and polymeric coatings/DEHP); *Id*. § 177.1210 (plasticizer/DEHT).

Prior to being permitted to access PlasticList's reports, the website requires users to view and acknowledge a disclaimer that the report's results are "not solid enough on [their] own to draw conclusions or make policy recommendations or even necessarily to alter [] personal purchasing decisions." RJN at 78. The disclaimer also states that the report admittedly only "represent[s] [] point-in-time results of a small number of product samples," which "may not be representative of actual product contents." *Id*.

2

25-cv-00907-JES-VET

Notwithstanding PlasticList's disclaimer, Plaintiff contends that the Products are false and misleading because consumers understand "Only Natural Ingredients" as a promise that the Products do not contain any levels of phthalates and are safe and healthy. Compl. ¶¶ 3, 23, 39. Plaintiff contends further that Chobani had a duty to disclose the presence of phthalates in the Products, and it is apparent from its labels, it failed to do. *Id.* ¶ 33. Plaintiff does not allege that the specific Product she purchased, in-fact, contained phthalates. *See generally id.* Plaintiff alleges that based on Chobani's alleged misrepresentations and omissions, Plaintiff "would have paid substantially less for the product or would not have purchased the Product at all" had she known that the Product she purchased allegedly contained phthalates. *Id.* ¶ 32.

### B. Procedural Background

On April 16, 2025, Plaintiff, on behalf of herself and all other similarly situated plaintiffs, filed the Complaint. *See* Compl. On June 11, 2025, Defendant filed the instant Motion. *See* Mot. Plaintiff filed her Response on July 31, 2025. ECF No. 10, ("Res."). Defendant filed its Reply on August 13, 2025. ECF No. 11, ("Reply"). On August 13, 2025, the Court heard oral argument on the Motion, then took the matter under submission. ECF No. 12. On October 9, 2025, Plaintiff filed an Ex Parte Motion for Leave to File Supplemental Authority. ECF No. 15. The Court denied the Ex Parte Motion on October 14, 2025. ECF No. 16.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the action. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Id*. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

3

Jurisdiction is not presumed, and the party asserting jurisdiction has the burden to establish that it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone* 373 F.3d at 1039 (citations omitted).

However, the Ninth Circuit recently clarified that "when jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

**B.     Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint

25-cv-00907-JES-VET

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

### C.    Leave to Amend

When a court dismisses a claim, it must then decide whether to grant the plaintiff leave to amend. A district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). The court considers factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Dismissal without leave to amend is proper only, if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

### III.    JUDICIAL NOTICE

At the motion to dismiss stage, courts will generally limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, the incorporation-by-reference doctrine permits courts to consider documents that were not attached to a pleading. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (citation omitted); *see also, e.g.*, *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1164 (S.D. Cal. 2024) (incorporating by reference documents that are "relied on" in the complaint, such as product labels, test results, online report, and online publication of testing methodology). "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014) (cleaned up).

A court "may [also] judicially notice a fact that is not subject to reasonable dispute," either because it is (1) "generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see, e.g.*, *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies."); *Villanueva v. Biter*, No. 11-cv-01050-AWI-SAB (PC), 2017 WL 6040326, at *3 (E.D. Cal. Dec. 6, 2017) (taking judicial notice of reports by California state agencies); *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-15-1597 CW, 2010 WL 3448531, at *1 n.1 (N.D. Cal. Sept. 1, 2010) (taking judicial notice of the test report that plaintiff relied on to show that certain substances were detected in the products); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) ("The Court finds [that government documents] are properly subject to judicial notice because they are publicly available webpages and their contents are not subject to reasonable dispute.").

Defendant requests that the Court take judicial notice and/or incorporate by reference the following documents in support of its Motion: (1) Exhibit A: images of Chobani's 5.3 ounce and 32 ounce Plain Nonfat Greek Yogurt product packaging labels; (2) Exhibit B: Image of Chobani's 32 ounce Plain Whole Milk Greek Yogurt Label; (3) Exhibit C: PlasticList – Chobani Greek Yogurt Nonfat Plain Test Results; (4) Exhibit D: PlasticList – Chobani Whole Milk Plain Greek Yogurt Test Results; (5) Exhibit E: U.S. Food & Drug Administration , Phthalates In Cosmetics; (6) Exhibit F: State of California Office of Environmental Health Hazard Assessment Prop. 65 Foods Fact Sheet; (7) Exhibit G: PlasticList – PlasticList Report; (8) Exhibit H: PlasticList - Pop up Disclaimer; (9) Exhibit I: U.S. Consumer Product Safety Commission ("CPSC"), CPSC Staff Statement on University of Cincinnati Report "Toxicity Review for Di-2-ethylhexyl Terephthalate (DEHT); and (10) Exhibit J: U.S. CPSC, Memorandum –Toxicity Review for Diethyl Phthalate (DEP).

//

25-cv-00907-JES-VET

The Court incorporates by reference Exhibits A; B; C; D; and G, as they are relevant to the instant case, neither party questions their authenticity, and Plaintiff's Complaint references and relies on these documents to support its allegations. *See* Compl. ¶¶ 1, 17-18, 23; *Id*. at 5 n.4. While Plaintiff's Complaint does not specifically rely on Exhibit H, it is a document on PlacticList's website, which users, like Plaintiff, were required to view and acknowledge prior to being able to view the relied upon test results. RJN at 4. Considering that access to the test results—on which Plaintiff's Complaint is heavily premised on and referred to—was predicated on acknowledging Exhibit H, the Court finds that taking judicial notice of it, is appropriate.

The Court takes judicial notice of Exhibits E, F, I and J because they are documents that were published and maintained on a state or federal website, are relevant to the issues at hand, and neither party disputes its authenticity. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010). The Court, however, does not take judicial notice of the truth of any disputed facts contained in these exhibits. *See Lee*, 250 F.3d at 689.

## IV.   DISCUSSION

### A.   Article III Standing

Defendant contends that Plaintiff lacks standing as she cannot plausibly allege that the Product she purchased was worth less than what she paid, due to it containing, or risked containing, phthalates. Mot. at 28. Therefore, the Court should dismiss this case. *Id*. Defendant maintains that Plaintiff fails to identify a representation related to phthalates. Thus, Plaintiff's alleged injury, premised on loss of some benefit, was never part of the basis of the bargain. Chobani advances its position further by raising two additional arguments. *Id.* at 29.

First, PlasticList's testing does not support the inference that the Product Plaintiff purchased actually contained phthalates because the tested Product's differed in size from the one that Plaintiff purchased (i.e., 32 oz vs. 5.3 oz). *Id*. at 29. Defendant argues that this disparity could reasonably affect phthalate levels, as each size container calls for a different amount of #5 plastic. Meaning, under Plaintiff's leaching theory, phthalate levels in the 5.3

25-cv-00907-JES-VET

oz Product would likely be lower than those detected in the 32 oz Product. *Id*. at 29–30. Moreover, as half of the PlasticList tests detected no phthalates, it is also plausible that the Plaintiff-purchased Product did not contain phthalates at all. *Id*. at 30.

Second, PlasticList's testing does not support even a risk of phthalate exposure in the Plaintiff-purchased Product. *Id*. Defendant points to several compounding deficiencies: the size discrepancy between Products; the fact that testing occurred approximately one year after Plaintiff's purchase; PlasticList's own caveat that results "may not be representative of actual product contents"; and the absence of any detectable phthalates in nearly half the samples PlasticList tested. *Id*.; *see* RJN at 13–23. Taken together, Defendant argues, these unreliable results cannot plausibly support the inference that Plaintiff purchased a Product that contained, or even risked containing, phthalates. Mot. at 30.

Plaintiff counters, citing *Bowen* and *Albrigo v. Chobani*, that she has plausibly alleged an injury in fact sufficient to confer standing because she asserts that she overpaid for the Product based on her reliance on Defendant's false representation. Opp. at 21; *see* 118 F.4th at 1134; *see also Albrigo v. Chobani*, No. 3:24-CV-01418-BJC-KSC, 2025 WL 1930007, at *11 (S.D. Cal. July 11, 2025).

Article III provides federal courts jurisdiction over "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). To establish standing, a plaintiff must satisfy a three-element test. First, they must have suffered an "injury in fact," that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* (citations omitted). Second, the injury must be "fairly traceable to the challenged action of the defendant" *Id.* at 560 (citations and alterations omitted). Finally, "it must be likely … that the injury will be redressed by a favorable decision." *Id.* (citations omitted).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Further, "[a] plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing

25-cv-00907-JES-VET

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). "[A] plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than she otherwise would have due to a defendant's false representations about the product." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020); *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("In a false advertising case, plaintiffs meet [the economic injury-in-fact] requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." (internal quotation and citations omitted)).

The Ninth Circuit's decision in *Bowen* dispenses with Defendant's standing arguments. 118 F.4th at 1134. In *Bowen*, plaintiff brought a putative class action alleging that defendants' sunscreen products contained an unsafe level of benzene. *Id.* at 1140. The plaintiff asserted, *inter alia*, claims under the UCL, FAL or CLRA. *Id*. There, plaintiff alleged that she "would have never paid a premium for sunscreen products that contained or were at risk of containing the carcinogen benzene" and to have "suffered economic injury when she spent money to purchase sunscreen products she would not otherwise have purchased, or [would have] paid less for, absent Defendants' misconduct" *Id*. at 1141.

There, the court found that the district court erred by making factual findings by relying on an FDA guideline that permitted 2 ppm of benzene in sunscreen; concluded that plaintiff failed to allege facts "that tend to show a non-speculative increased health risk or actual economic harm;" and granted defendants' motion to dismiss. *Id*. Accordingly, the Ninth Circuit reversed, holding that under a theory of economic harm, a plaintiff only needs to show to have either paid more for the product than they otherwise would have, or would not have even purchased the product, but for the defendant's false representations or actionable omissions about the product. *Id*. at 1147. (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013)).

In *Albrigo*—a case from this district—plaintiff alleged that she was in search of food containing only natural ingredients because she believes such food to be a healthier option.

2025 WL 1930007, at * 11. She alleged further that she relied on the Chobani label's "Only Natural Ingredients" representation and would not have been willing to pay as much as she did, which was more than the cost of similar products without misleading labeling, if she had known that the Products contained manufactured or unnatural ingredients. *Id*. Accordingly, the *Albrigo* court found these allegations to establish plaintiff's standing. *Id*. at *10.

Here, Plaintiff alleges that she "relied on prominent representations on the Product's labeling and packaging that the Product contains 'Only Natural Ingredients.'" Compl. ¶ 6. She also alleges to have "reasonably understood Defendant's representations and warranties to mean the Product is free of non-natural toxic chemicals, like phthalates and therefore expected that the Product can be purchased and consumed as marketed and sold." *Id*. She alleges further that "Defendant's untrue representations were part of the basis of the bargain in that she would not have purchased the Product, or would not have purchased it on the same terms, if the true facts had been known." *Id*. Finally, she alleges that "as a direct result of Defendant's material misrepresentations and omissions, Plaintiff suffered, and continues to suffer, economic injuries." *Id*.

The Court, thus, finds that Plaintiff has sufficiently alleged economic harm sufficient to confer Article III standing. *See Bowen*, 118 F.4th at 1146-47. Accordingly, Defendant's Motion to Dismiss for lack of standing is **DENIED**.

**B.    Rule 9(b)**

Claims that "sound in fraud," must satisfy the heightened pleading requirements of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The Ninth Circuit has held that a claim sound in fraud—and consequently must meet the Rule 9(b) pleading requirements—where "the plaintiff [ ] allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). This standard requires that a plaintiff to allege with particularity, the "who, what, when, where, and how" of the misconduct charged, so that defendants have notice and can defend against the alleged

misconduct. *See Kearns*, 567 F.3d at 1124. The complaint must also state "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F. 3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*, Private Sec. Litig. Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1).     `

Here, Plaintiff's claims rely entirely on the same course of alleged fraudulent conduct: Defendant's representations that their products are made with "Only Natural Ingredients" is false and misleading because the Products allegedly contain phthalates, a harmful chemical. Compl. ¶ 36. Accordingly, Plaintiffs' claims are subject to Rule 9(b)'s heightened pleading requirement. *See Loh v. Future Motion, Inc.*, No. 21-cv-06088-EJD, 2022 WL 2668380, at *5 (N.D. Cal. July 11, 2022) ("[E]ach claim is subject to the requirements of Rule 9(b).").

Defendant argues that Plaintiff's claims should be dismissed pursuant to Rule 9 because she fails to plead, with sufficient particularity, "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Mot. at 13 (quoting *Surzyn v. Diamond Foods, Inc.*, No: C 14–0136 SBA, 2014 WL 2212216, at *5 (N.D. Cal. May 28, 2014)).

Plaintiff alleges that Defendant made representations and warranties to Plaintiff and Class Members during the putative class period, that its Products were safe and healthy to eat. Compl. ¶¶ 37, 39. Defendant's conduct, Plaintiff alleges, was effectuated through its labeling and omitted material disclosures of the true contents of the Products. Further, these material misrepresentations and omissions were made, despite Defendant's knowledge that the Products were not free of harmful chemicals, to induce consumers to purchase its Products. *Id.* ¶ 24.

Plaintiff's Complaint states that in 2023, she bought a Nonfat Plain Greek Yogurt Product, that was produced by Defendant, from a retail store in San Marcos, California. *Id.* ¶ 6. That Product was labeled with a specific representation, which shaped her belief that the Product was free of non-natural toxic chemicals, such as phthalates. *Id*. Plaintiff alleges that this representation is false and misleading because a December 2024 report published

by PlasticList, an organization that contracted with "a third-party ISO/IEC 17025-accredited laboratory to test, *inter alia*, Defendant's Products for the presence of plastic chemicals, showed that the item she purchased contained DEHP, DEP, and DEHT, which are harmful and non-natural chemicals. *Id*. ¶¶ 12,17–19, 21-22.

Defendant argues that the purported third-party testing of five of Defendant's Products in 2024, does not support Plaintiff's theory that the Product she purchased, a year before this testing was conducted, also contained phthalates. Mot. at 19. However, Plaintiff alleges that the containers for Defendant's Products—including the one that she purchased and those that were tested—are made from the same material, #5 plastic. Compl. ¶¶ 26-27. She alleges further that these containers are likely the source of some, if not all, of the phthalates leaching into the Products. *Id*. ¶ 31. These allegations create a plausible inference that the Product that Plaintiff purchased contained phthalates.

Accordingly, the Court finds that Plaintiffs' claims meet the heightened pleading standard of Rule 9(b).

## C.    Plaintiff's DBP Allegation

Defendant argues that Plaintiff's allegations based on the presence of DBP fail under Rule 9(b). Mot. at 19 n. 2. The Complaint alleges that DEHP, DEP, and DEHT were detected in PlasticList's testing. *See* Compl. ¶ 18. However, it does not allege the same with respect to DBP. *See generally* Compl. In fact, DBP is only mentioned in the Complaint where Plaintiff provides a general overview on phthalates and is referenced when she discussed Proposition 65. *Id*. ¶¶ 19-20.

In the Opposition, Plaintiff alleges Defendant's representation relates to DBP and PlasticList's tests showed that the Products contained DBP. Opp at 1-2. However, the Complaint does not make any particularized allegation of when, how, or in what manner DBP was present in the Products at issue. This falls short of Rule 9(b)'s requirements. Therefore, all allegations premised on DBP are **DISMISSED**, with leave to amend.

//

//

25-cv-00907-JES-VET

## D. Fraud Based Claims

Having found that Plaintiff's Complaint satisfies Rule 9(b), the Court turns to analyze Plaintiff's UCL, FAL, and CLRA claims, based on Defendant's alleged fraudulent omissions and misrepresentations. The UCL prohibits business practices that are "unlawful, unfair or fraudulent," Cal. Bus. & Prof. § 17200; the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500; and the CLRA proscribes active misrepresentations about the "standard, quality or grade" of a particular good, Cal. Civ. Code § 1770(a).

Here, Plaintiff's UCL, FAL and CLRA claims are premised on a theory of misrepresentation because the representations on the Product's labels mislead consumers to believe that they are "free of toxic plastic chemicals" and, therefore, healthy and safe to eat. Compl. ¶¶ 23-25. Conversely, Plaintiff alleges that Defendant failed to inform consumers "that the Products contain, or risk containing, toxic phthalate chemicals." *Id*. ¶ 29.

### 1. Misrepresentations

To plausibly allege a UCL, FAL or CLRA claim, based upon misrepresentation, Plaintiffs "must allege that they relied on a misrepresentation and suffered injury as a result." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993). The "reasonable consumer" standard governs claims under these statutes. *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). "A reasonable consumer is an ordinary consumer acting reasonably under the circumstances." *Skinner v. Ken's Foods, Inc.*, 53 Cal. App. 5th 938, 949 (2020) (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682, (2006) (internal quotations omitted)). The reasonable consumer is not "exceptionally acute [or] sophisticated", nor are they "necessarily [] wary or suspicious of advertising claims." *Id*. (quoting *Souter v. Edgewell Pers. Care Co.*, No. 22-55898, 2023 WL 5011747, at *1 (9th Cir. Aug. 7, 2023)).

To prevail under these claims, a plaintiff must show that a reasonable consumer is "likely to be deceived" by the defendant's marketing claims. *Whiteside*, 108 F.4th at 777

(quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). There are two ways that this standard can be met. *See Salazar v. Walmart, Inc.*, 83 Cal. App. 5th 561, 566 (2022). By showing that the defendant's advertisement is: (1) false; or (2) true but still is "either actually misleading ... or has a capacity, likelihood, or tendency to deceive or confuse the public." *Id.*

This standard calls for "more than a mere possibility" that a defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner". *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Indeed, there must be "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* The Ninth Circuit has frequently held that the reasonable consumer test, "raises questions of fact," thus, it is a "rare situation in which granting a motion to dismiss is appropriate." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Williams*, 552 F.3d at 939.

Defendant raises three arguments as to why its Products' representations are not misleading and Plaintiff's fraud-based claims should, therefore, be dismissed. Mot. at 13-14. First, presuming that the Products contained phthalates, Plaintiff fails to allege that phthalates are used, or act, as ingredients in the Products. *Id.* at 14-15. Therefore, Plaintiff does not identify any representations related to phthalates. *Id.* Further, phthalates are absent from the Products' ingredients list. *Id.*; *see* RJN at 8-12. This omission supports the notion that phthalates are not ingredients in the Products.

Here, Plaintiff alleges that Defendant's Products labels which claims to be comprised of, "only natural ingredients," while affirmatively disclaiming the presence of any "artificial flavors," "artificial sweeteners," or "preservatives", represents to her and other reasonably consumers, that the Product is free of unsafe, unnatural, toxic substances, such as phthalates. Compl. ¶¶ 23, 25, 29, 55; *see* RJN at 12. She alleges further that there are two reasons the Products are likely to contain phthalates. First, a third-party lab conducted testing on the Products, which showed that they contained phthalates. *See*

14

Compl. ¶¶ 12, 17. Second, phthalates, which readily leach into surrounding surfaces and food, are commonly used as a catalyst to make the # 5 plastic container that Defendant predominately uses for its Products. *Id.* ¶¶ 27, 31.

Ninth Circuit jurisprudence has made clear that, at the motion to dismiss stage, a reasonable consumer could understand representations that use terms such as "100% natural" or "natural," modified by other terms connoting that it is "all natural," to mean "that a product does not contain any non-natural ingredients." *Gasser v. Kiss My Face, LLC.*, No.17-cv-01675-JSC, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017); *see Williams*, 552 F.3d at 938-39 ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural"); *see also Corpuz v. Bayer Corp.*, No. 22-cv-1085-MMA (JLB), 2023 WL 2292579, at *4 (S.D. Cal. Feb. 28, 2023).

Here, Defendant's implicated representation contains the term, "only," which modifies the word, "natural," to assert that the Product is "all natural." *See* RJN at 9. Therefore, the Court finds it plausible that a reasonable consumer would understand the Product's "only natural ingredients" statement to mean that that it does not contain any "non-natural ingredients." *See Gasser*, 2017 WL 4773426 at *5. Further, a reasonable consumer is likely to interpret the meaning of the term, "ingredient," by its ordinary definition: "something that enters into a compound[1] or is a component part of any combination or mixture."[2] Therefore, regardless of the means in which the presence of phthalates in the Products is established (i.e., whether it was presumed, plausibly alleged, or proven), would likely cause a reasonable consumer to find that the Products' ingredients include phthalates. Further, a reasonable consumer would find further that the presence of //

---

[1] Defined as "[s]omething that is composed of two or more separate elements." MERRIAM-WEBSTER DICTIONARY, *Compound*, available https://www.merriam-webster.com/dictionary/compound.

[2] MERRIAM-WEBSTER DICTIONARY, *Ingredient*, https://www.merriam-webster.com/dictionary/ingredient.

phthalates, non-natural ingredients, would render Defendant's "only natural ingredients" representation false. Thus, satisfying the reasonable consumer standard.

Ninth Circuit law negates Defendant's argument that phthalates are not ingredients merely because they omitted are from the ingredient list. *Williams*, 552 F.3d at 939 (holding that reasonable consumers should not be "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016) ("an ingredient list does not correct, as a matter of law, misrepresentations on the product's label. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings.").

Having established that phthalates are ingredients in the Products', the Court finds that the Product's "Only Natural Ingredients" representation relates to phthalates. Thus, the Defendant's first argument fails.

Defendant's second argument is that a reasonable consumer would not interpret "Only Natural Ingredients" to mean that the Products are completely free from trace amounts of phthalates. Mot. at 16-17.

The Court previously found it plausible that the implicated representation's use of the term, "only," causes a reasonable consumer to understand the Products do not contain any "non-natural ingredients." *See Gasser*, 2017 WL 4773426 at *5. This is because "only," generally means "alone in a class or category," "solely" or "exclusively."[3] So, stated another way, it is plausible that a reasonable consumer would understand the Product's statement to mean that the Products contain either 100% natural ingredients or 0% non-natural ingredients. *See id*. Consequently, even trace amounts of a non-natural substance, like phthalates, would exponentially alter the previously stated percentages, //

---

[3] MERRIAM-WEBSTER DICTIONARY, O*nly*, available https://www.merriam-webster.com/dictionary/only.

25-cv-00907-JES-VET

which in turn results in a misleading "natural" claim. As a result, Defendant's second argument also fails.

Finally, Defendant argues that Plaintiff fails to plausibly allege that the levels of phthalates in the Products render them unhealthy or unsafe to consume. Mot. at 17. Therefore, Plaintiff's claim that the Product's "Only Natural Ingredients" representation deceives consumers into believing that the Products are safe and healthy—because it does not contain any amount of phthalates—must fail. Mot. at 17-18.

The Court acknowledges that some courts have required Plaintiffs to allege the presence of the alleged harmful substance, at a particular level, to support a misrepresentation claim. *See, e.g., Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 801 (N.D. Cal. 2024) ("[t]he complaint does not actually allege the level associated with these harms"); *In re Hain Celestial Heavy Metals Baby Food Litig.*, 2024 WL 5239510, at *12 (E.D.N.Y. Dec. 27, 2024) ("without plausibly alleging what concentration of various heavy metals in baby food products would actually be unsafe... Plaintiffs have failed to allege why the levels of these naturally-occurring heavy metals (other than arsenic)... would be material to the reasonable consumer"); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D Cal. Apr. 16, 2024) (plaintiffs "fail[ ] to plausibly allege that the levels of the cadmium *in the Products* render them unhealthy"). However, the Court finds that this would veer too close to a question of fact, thus, making it an inappropriate requirement at this stage. *See Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023).

Here, Plaintiff alleges that natural ingredients are one of the most important aspects of healthy food, which is why she, and reasonable consumers, are vastly more likely to purchase a product with a "natural" label. Compl. ¶ 24. Indeed, she alleges that, when food packaging does not contain the word "natural," over half of reasonable consumers, assume the product must contain chemicals. *Id*. Similarly, nearly half of reasonable consumers assume that such offerings are unhealthy or full of preservatives. *Id*. It is for these reasons, and those stated above, that Plaintiff, and reasonable consumers, understand that a product

17

voluntarily claiming to be comprised of "only natural ingredients" would, indeed, be comprised of only natural ingredients—and wholly free of any toxic plasticizers. *Id*.

However, Plaintiff alleges that the Products contain, or risk containing, "unsafe levels" of toxic phthalate chemicals. *Id*. ¶¶ 6, 29. She alleges the presence of specific compounds, by name, which were found in the Products through third-party testing. *See id*. ¶¶ 18-19. She also alleges the harmful nature of these chemicals, as their health impacts include disruptions of the endocrine, respiratory, and nervous systems, which can result from both high and low dose exposure. *Id*. ¶¶ 14-15. Accordingly, the Court finds that Plaintiff has sufficiently alleged the presence, or risk of containing, phthalates in the Products, at levels that create sufficient potential risk of harm.

Considering "the factual inquiry required to adequately assess the merits of the reasonable consumer standard," and that doing so at the pleading stage would be inappropriate, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's misrepresentation claims. *Chase v. Hobby Lobby Stores, Inc.*, No.: 17-cv-00881-GPC-BLM, 2018 WL 786743, at *5 (S.D. Cal. Feb. 8, 2018).

### 2. Omissions

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," (a "partial omission"); or (2) "an omission of a fact the defendant was obliged to disclose" (a "pure omission"). *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). A defendant only has a duty to disclose when either: (1) the defect relates to an unreasonable safety hazard, or (2) the defect is material, "central to the product's function," and the plaintiff alleges one of the four *LiMandri* factors. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. July 18, 2022) ("The *LiMandri* factors are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the //

25-cv-00907-JES-VET

defendant makes partial representations but also suppresses some material facts.") (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

A plaintiff cannot allege that a partial omission causes a duty to disclose to latch where they only claim that the defendant's marketing labels are outright false. *Hamman v. Cava Grp., Inc.*, No. 22-CV-593-MMA (MSB), 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023); *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020) ("Indeed, the entire theory of a case based on partial omissions is that what is disclosed is in some sense true but that the whole truth is missing."). This is because all misrepresentations are merely omissions of the facts that make the statement untrue. *Little v. First Cal. Co.*, 532 F. 2d 1302, 1304 n.4 (9th Cir. 1976).

Here, Plaintiff alleges a partial omission as she argues that Defendant's Products label representing to use "Only Natural Ingredients," led her, and other reasonable consumers, to believe that the Products do not contain non-natural substances. Compl. ¶ 23. But contrary to that representation, Plaintiff alleges that the Products contain phthalates, non-natural and toxic plastic chemicals. *Id*. Defendant argues that its Products make no representation that the Products are free of phthalates. Mot. at 20. Therefore, to the extent Plaintiff adequately alleges the presence of any phthalates in the Products, that presence is not "contrary" to a representation. *Id*.

The Complaint's allegations make clear that Plaintiff argues that the Products' labels are outright false. *See* Compl. ¶¶ 45, 69, 79,81, 82, 100. The Court, therefore, finds that Plaintiff fails to allege her claims under a partial omission theory. *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229 (C.D. Cal. 2025) (citing *Hamman*, 2023 WL 3450654, at *9.

Any pure omission claim Plaintiff may have asserted in the Complaint has effectively been conceded, as in her Opposition, she offers no response to Defendant's showing on this point. *See* Opp. at 3-4. Thus, Plaintiff's omission theory fails and is, therefore, **DISMISSED**.

//

//

25-cv-00907-JES-VET

**E.      Proposition 65**

Defendant contends that Plaintiff cannot plausibly claim the Products are unhealthy given that the alleged phthalate levels, detected by PlasticList's testing, are many orders of magnitude below Proposition ("Prop.") 65's warning thresholds—the most stringent in the nation. Mot. at 8; RJN at 13–23. Defendant contends further that the Products "are *safe to eat* according to the FDA, EPA, and EFSA standards for chemical content in foods." *See* RJN at 46 (emphasis added). Therefore, the Court should dismiss this case under California's "safe harbor" doctrine. Mot. at 8, 22.

Under California's safe harbor doctrine, courts may not use the UCL to "condemn actions the Legislature permits." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999); *accord Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (affirming dismissal of UCL and CLRA claims under safe harbor doctrine where defendant's conduct was expressly permitted by state law). A business that complies with applicable state statutes or regulations is sheltered against consumer claims alleging that its complying conduct is unlawful or deceitful. *Dinan v. SanDisk LLC*, 844 F. App'x 978, 980 (9th Cir. 2021); *Davis v. HSBC Bank Nev.*, 691 F.3d 1152, 1165–66 (9th Cir. 2012).

Prop. 65 provides that "no person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual where the amount exceeds the [agency-established] no significant risk level." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 787 (N.D. Cal. 2015). However, pursuant to the statutory safe harbor, this duty to warn does not apply to business operators when Prop. 65-regulated chemicals exposure levels are equal to or less than the "no significant risk level." *See* Cal. Health and Safety Code § 25249.10(c). Under Prop. 65, private plaintiffs, are authorized to enforce its warning requirements. *Id*. § 25249.7. But before filing suit, a private party must provide at least sixty (60) days' notice of the alleged violation to the Attorney General, the district attorney, city attorney, or prosecutor in whose jurisdiction the violation allegedly occurred; and to the alleged violator. *Id.* § 25249.7(d)(1).

"California courts strictly enforce the notice requirements and hold that defective notice cannot be cured retroactively." *Harris v. R.J. Reynolds Vapor Co.*, No. 15-cv-4075, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016) ("A defective Proposition 65 claim should be dismissed with prejudice.") (citing *Sciortino*, 108 F. Supp. 3d at 790).

Plaintiff responds, averring that Prop. 65 is not relevant to her claims for two reasons. First, the Complaint peripherally refers to Prop. 65, mentioning that two of the alleged phthalates, DEHP and DBP, that she claims the Products were found to contain, are on the Prop. 65 chemical list. Compl. ¶¶ 19-20. However, Plaintiff contends that her claims are not derivative of Prop 65. *Id*. ¶¶ 19-20, 22. Rather, she alleges that Defendant's misleading statements about the Products hoodwinked her into believing the Product was of a certain nature that she alleges to be false. *Id*. ¶ 6. Thus, her claims are completely independent, and certainly not derivative, of Prop. 65. *Harris*, 2016 WL 6246415, at *2.

Second, Prop. 65 is specifically concerned with chemicals "known to the state to cause cancer" or "reproductive toxicity." Cal. Health & Safety Code § 25249.6. However, Plaintiff alleges that phthalates cause endocrine disruption, developmental harm, immunological and renal harm, and hormone disruption, Opp. at 30-31; Compl. ¶¶ 19-20, 22. Such harms are far "outside the scope of Proposition 65," and therefore, make clear that Prop. 65 is not relevant to Plaintiff's claims. Thus, Prop. 65 should not be the basis under which the Court dismisses her claims. *Rodriguez*, 703 F. Supp. 3d at 1208.

The Court finds the parties' arguments persuasive but declines to dismiss Plaintiff's claims, as Defendant requests, on this ground because doing so could only result from the Court improperly making factual findings on contested issues, at the pleading stage. *See Bowen,* 118 F.4th at 1146. For example, the Court would have to find that Defendant's Proposition 65 compliance provides a complete safe harbor for consumer protection liability as a matter of law. This would require the Court to rely on the "FDA, EPA, and EFSA standards for chemical content in foods" to find that the Products are safe to eat. *See* RJN at 46. The Court would also have to find whether Plaintiff's allegations, (e.g., that phthalates operate under a "non-monotonic dose response curve" mechanism where

25-cv-00907-JES-VET

traditional "dose makes the poison"), are scientifically accurate and legally sufficient. Such integral and undoubtedly contested issues, which would be inappropriate to resolve at this stage, and with this current record.

The Court, therefore, **DENIES** Defendant's Motion to Dismiss this action on Proposition 65 grounds.

### F.    Equitable Relief

Plaintiff seeks restitution and disgorgement, under the UCL; restitution, disgorgement, and injunctive relief, under the FAL; and damages, injunctive relief, and restitution, under the CLRA. Compl. ¶¶ 60, 74, 84. Defendant moves to dismiss the equitable claims under the UCL, FAL, and the CLRA, arguing that Plaintiff "seeks monetary damages in her Complaint [and] fails to explain why such an award would be inadequate to remedy her alleged injuries. Mot. at 26.

Plaintiff concedes her claims for equitable relief under the UCL and FAL and requests the Court grant her leave to amend. Opp. at 31. But argues that Rule 8(d)(2) permits alternative pleading and that, at the pleading stage, she should be permitted to plead her unjust enrichment claim, in the alternative. *Id.*; *see* Fed. R. Civ. P 8(d)(2).

The Ninth Circuit has made clear that, under "traditional principles governing equitable remedies in federal court," a plaintiff must "establish that she lacks an equitable remedy at law before securing equitable restitution for past harm[.]" *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This means that a plaintiff "must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief." *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083, 1093 (N.D. Cal. 2023) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)).

Due to the challenge courts face when attempting to determine the adequacy of legal remedies at the outset of litigation, courts may permit unjust enrichment claims to survive at the pleading stage. *See Lopez v. Abbott Laboratories*, No. 3:22-cv-00421-L-RBB, 2023 WL 2657627, at *4 (S.D. Cal. 2023); *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881,

895-97. However, *Sonner* still requires that plaintiffs allege that legal remedies are inadequate. It is not sufficient to merely assert that the issue can be resolved later. *See Obillo v. i-Health Inc.*, No. 24-cv-02459-PHK, 2025 WL 844389, at \*4 (N.D. Cal. Mar. 18, 2025); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at \*2 (N.D. Cal. Oct. 13, 2020) ("[T]his is not an election of remedies issue. The question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all.").

Here, Plaintiff seeks money damages that are identical under both the CLRA and warranty claims, but she has not adequately pled that such remedies are inadequate. *See generally* Compl. Therefore, it would be improper for the Court to permit it to survive beyond this stage. *See Sonner*, 971 F.3d at 844.

The Court, therefore, **GRANTS** Defendant's Motion to Dismiss Plaintiff's claims for equitable relief under the UCL, FAL, and CLRA; and also, for unjust enrichment. However, the Court also, **GRANTS** Plaintiff leave to amend for each of these claims.

**G.    Express Warranty**

Defendant argues that for the reasons it previously stated, Plaintiff's express warranty claim should be dismissed. Mot. at 25.

To state a breach of express warranty claim, Plaintiff must allege: (1) an affirmation of fact or promise by the seller; (2) that the statement was part of the basis of the bargain; and (3) breach. *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 WL 1788397, at \*11 (N.D. Cal. May 5, 2021). Courts have held that statements on a food product's label can create an express warranty. *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899–00 (N.D. Cal. 2012) ("All Natural & Organic" cosmetic products); *Vicuna v. Alexia Foods, Inc.*, No. C 11–6119 PJH, 2012 WL 1497507, at \*2 (N.D. Cal. Apr. 27, 2012) ("All Natural" label on potatoes was an express warranty that they did not have artificial ingredients) label statements may create express warranties regarding contaminants, where those statements would reasonably imply freedom from those contaminants.). Moreover, "courts in this district regularly hold that stating a claim

under California's consumer protection statutes is sufficient to state a claim for express warranty." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017).

Pursuant to the Court's discussion of Plaintiff's claims brought under California's consumer protection statutes and her Article III standing, the Court finds that Plaintiff has sufficiently pled all three elements. *See supra* Section IV.A, D. Thus, Defendant's Motion to Dismiss Plaintiff's express warranty claim is **DENIED**.

### H. Unjust Enrichment

The Court has already discussed Plaintiff's unjust enrichment claim, and found that she failed to establish that she lacks an adequate remedy at law. The Court, therefore, **DISMISSES** Plaintiff's unjust enrichment claim, with leave to amend**. *See supra* Section IV.F; *Sonner*, 971 F.3d at 844.

### V. CONCLUSION

For the reasons discussed above, the Court **ORDERS** the following:

(1) Defendant's Motion to Dismiss the Complaint pursuant to Rule 9(b), for failure to plead with particularity, is **GRANTED IN PART** and **DENIED IN PART**;

    a. Any allegations premised on the presence of DBP in the Products, are **DISMISSED** with Leave to Amend.

    b. In all other respects, the Motion to Dismiss for failure to plead with particularity is **DENIED**.

(2) Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, is **DENIED**;

(3) Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**; and

    a. Plaintiff's fraudulent omission claims under the UCL, FAL, and CLRA are **DISMISSED** with Leave to Amend.

//

25-cv-00907-JES-VET

b.   (i) Count V – Unjust Enrichment/Restitution of the Complaint; and (ii) Plaintiff's claims for equitable relief under the UCL, FAL, and CLRA are **DISMISSED** with Leave to Amend.

c.   In all other respects, the Rule 12(b)(6) Motion for failure to state a claim, is **DENIED**.

(4)   The Court **GRANTS** Plaintiff Leave to file a First Amended Complaint ("FAC"). Plaintiff **MUST** file the FAC no later than 5:00 p.m. on May 6, 2026.

**IT IS SO ORDERED.**

Dated: April 6, 2026

Honorable James E. Simmons Jr.
United States District Judge

25-cv-00907-JES-VET